**CHANHASSEN ESTATES RESIDENTS ASSOCIATION, Michael E. Murphy, Thomas Katsonas, David Soenen, R.W. Lownsbury, R.W. Connell, Gary Arndt and Keith Boudrie, Respondents (C2–82–1039), Appellants (C9–82–1250),**

v.

**The CITY OF CHANHASSEN, Respondent,**

**and**

**McDonald's Corporation, intervenor, Appellant (C2–82–1039), Respondent (C9–82–1250).**

Nos. C2–82–1039, C9–82–1250.

Supreme Court of Minnesota.

Jan. 13, 1984.

Cragg & Bailly, Ltd., Robert L. McCollum, Minneapolis, for respondents-appellants.

Larkin, Hoffman, Daly & Lindgren, James P. Larkin, Kathleen M. Oates, Minneapolis, for appellant-respondent.

Larson & Mertz, Craig M. Mertz, Minneapolis, for respondent City of Chanhassen.

COYNE, Justice.

Chanhassen Estates Residents Association (CERA) sued to enjoin the issuance to McDonald's Corporation of the building permit which the Chanhassen city council had authorized on May 10, 1982. The trial court concluded that the McDonald's facility as proposed was a conditional, rather than permitted, use but that the proposed McDonald's restaurant without a drive-thru window was a permitted use, and the trial court directed the city to issue a permit upon receipt of McDonald's plan for the restaurant without a drive-thru window. We reverse and remand for an order directing issuance of the building permit authorized by the city council on May 10, 1982.

In November of 1981 McDonald's entered into an agreement for the purchase of the westerly 1.3 acres of an 8.5 acre tract described as Outlot 2, Chanhassen Estates. Chanhassen Estates, a residential and commercial subdivision in the city of Chanhassen, is bounded on the north by Trunk Highway No. 5 and includes property lying east and west of Dakota Avenue. The McDonald's site is situated at the southeasterly corner of the intersection of Dakota Avenue with Highway 5. Access to the McDonald's site is afforded by the frontage road on the south side of the property. The McDonald's property has been zoned C–2 commercial since 1966, when Chanhassen Estates was platted, and the site is almost completely surrounded by properties zoned commercial or industrial.

On March 5, 1982, McDonald's applied for consideration of its planning request. In accordance with the provisions of Ordinance 33, McDonald's sought approval of its acquisition of part of Outlot 2. Ordinance 33 requires a public hearing before the planning commission and approval by the city council, prior to conveyance, for the division of any tract of land into two or more parcels. The application was also directed to the requirements of Ordinance 47, Chanhassen's zoning ordinance, for the issuance of building permits. Ordinance 47 requires design review, including review of the site plan, by the planning commission and approval by the city council in accordance with the procedures prescribed for the issuance of conditional use permits. Under the zoning ordinance a restaurant is a permitted use and a drive-in is a conditional use. McDonald's sought a permit for the construction of a restaurant with a "drive-thru" window. The city attorney advised the council that he regarded McDonald's proposed use as a permitted use.

The city planner and the city engineer reviewed McDonald's plan and recommended approval. The city engineer included in his report specific recommendations with respect to traffic management. Following a public hearing at which a spokesman for CERA voiced objection to the plan, the planning commission, an advisory body, recommended denial of McDonald's application.

On April 19, 1982, McDonald's application for subdivision plat approval and site plan review came before the city council. The city planner and engineer again recommended approval. Although a public hearing is not required unless the application is for a conditional use permit and although the council's deliberations were not noticed as a public hearing on McDonald's application, spokesmen for CERA spoke at length in opposition. A motion to approve McDonald's application failed to carry; the votes of the four council members present were equally divided.

McDonald's promptly instituted proceedings for a writ of mandamus commanding the city council to approve its application. At the next council meeting on May 3rd the member who had been absent from the previous meeting moved the reconsideration of McDonald's application. The four members present unanimously agreed to

reconsider the application at the May 10th council meeting and directed that CERA be notified of the scheduled reconsideration. CERA's spokesman again expressed opposition to the application. By a vote of three-to-two the council approved McDonald's application subject to certain conditions, one of which was the dismissal of McDonald's petition for a writ.

On May 28, 1982, CERA instituted this action for a declaratory judgment that the city council's action of May 10th was invalid and for an injunction against the issuance of a building permit. When McDonald's intervened in the CERA action, McDonald's, the city, and CERA stipulated to the consolidation of the CERA and McDonald's actions.[1]

The trial court found that McDonald's proposed facility was not a permitted use pursuant to Ordinance 47 and remanded the matter to the city council for consideration of McDonald's application as one for a conditional use permit. After the council had denied a conditional use permit, McDonald's and CERA both sought amended findings. In its amended findings issued July 26, 1982, the trial court found that although the facility as originally proposed was not a permitted use, the proposed restaurant without a drive-thru window was a permitted use, and he directed the city council to issue the necessary building permit. CERA's motion for a new trial was denied. Both CERA and McDonald's appeal.

 The principal issue is, of course, whether the proposed McDonald's facility is a permitted use or a conditional use under the Chanhassen zoning ordinance. Initially, however, we address the propriety of the city council's reconsideration of McDonald's application. Generally, a motion for reconsideration can be made only by one who voted with the prevailing side.[2]

The movant for reconsideration of McDonald's application had been absent and had not voted when the original motion for approval failed on a tied vote. The four council members present on May 3rd, however, unanimously agreed to reconsider the matter; the rules of procedure may be waived by a 4/5 vote of the council members; and the fifth council member expressly acquiesced in the reconsideration at the May 10th meeting. If the procedure was technically flawed—i.e., if the motion should have been for waiver instead of reconsideration—to declare an action which the council unanimously agreed to take invalid because incorrectly titled would indeed to exalt form over substance. We decline to do so.

Whether the McDonald's facility as proposed is a permitted use or a conditional use in a C-2 commercial zone is governed by the zoning ordinance. The relevant sections of Ordinance 47 are these:

Section 4.02, the "Definitions" section of the ordinance, which defines "Drive-In-Establishment" as follows:

An establishment of the drive-in type is one which accomodates the patrons' automobiles, from which the occupants may receive a service or obtain a product which may be used or consumed in the vehicle on the same premises.

Section 10.02, headed "Permitted Uses", which states:

Within a C-2 Commercial District, no building or land shall be used except for the following uses:

\* \* \* \* \* \*

4. Restaurants, theaters and taverns, but not including "drive-in" type service.

Section 10.04, headed "Conditional Uses", which states:

---

1. Although McDonald's had proffered a stipulation of dismissal of its lawsuit, signed by McDonald's counsel, the stipulation was not executed on the city's behalf.

2. Neither Chanhassen Ordinance 67–A, which establishes rules of procedure for the city coun-

cil, nor Robert's Rules of Order Revised, which the ordinance accepts as authority on matters not specifically covered, address the question whether an absent member is deemed, for purposes of a motion for reconsideration, to have cast a negative vote.

Within a C–2 Commercial District, the following uses may be allowed, but only upon the securing of a Conditional Use Permit:

\* \* \* \* \* \*

2. Establishments of the "drive-in" type, except drive-in theaters, *offering goods or services directly to customers waiting in parked motor vehicles:* provided that, in addition to such other conditions as may be prescribed by any conditional use permit, the following minimum standards shall apply: [standards enumerated for parking, access, etc.] (emphasis added).

The trial court tested the propriety of the council's approval of the McDonald's facility as a permitted use by reference to §§ 4.02 and 10.02 only. Having found these two sections clear and unambiguous, the trial court declared that the McDonald's restaurant without a drive-thru window was a permitted use; with a drive-thru window, however, the establishment was not a permitted use because the product obtained at the drive-thru window could be consumed in the vehicle on the same premises. The trial court also determined that the proposed facility was not a "drive-in" within the provisions of section 10.04 enumerating conditional uses because customers served at a drive-thru window are not waiting in parked cars. The trial court resolved the conflicting definitions by construction: a use specifically excluded from permitted uses should be considered a conditional use.

 When the words of a statute or ordinance in their application to an existing situation are clear and free from ambiguity, judicial construction is inappropriate.[3] Were the ordinance being applied to a 1972 "drive-in," where car-hops serve food on trays to customers in parked vehicles, its meaning would be clear. A "drive-thru," however, is not a traditional "drive-in." The trial court's inability to reconcile the various sections governing C–2 Commercial

Zones is the result, as the city notes, of the application of the terms of an ordinance adopted in 1972 to business innovations developed years later.

 Ordinance 47 comprises a comprehensive plan for the regulation of the use of land and buildings in the City of Chanhassen. Since the various sections of the ordinance relate to the same subject matter and to each other, they should be construed together. *In Re Improvement of County Ditch No. 11, Martin County,* 253 Minn. 367, 91 N.W.2d 657 (1958). When the pertinent sections are taken together, it is apparent that the "drive-in" type service excluded in section 10.02 from permitted uses is the drive-in service specifically described in section 10.04 as a conditional use rather than that more generally defined in section 4.02. *McCarthy v. State,* 280 Minn. 226, 158 N.W.2d 708 (1968). Establishments of the "drive-in" type, described in language identical to that contained in section 10.04, are among the C–3 Commercial Zone permitted uses enumerated in § 11.02. Courts generally strive to construe a term according to its ordinary meaning. *Cf. Charles W. Sexton Co. v. Hatfield,* 263 Minn. 187, 116 N.W.2d 574 (1962). The description contained in sections 10.04 and 11.02 seems to be a more complete and accurate description and one more in accord with the commonly accepted concept of a "drive-in" than does the general definition in section 4.02. Nor are "drive-in" and "drive-thru" synonymous terms. Unless sections 10.02, 10.04 and 11.02 are construed together and the term "drive-in" is described uniformly for purposes of inclusion and exclusion, a drive-thru use would be neither a permitted use nor a conditional use—i.e., a drive-thru would be a use excluded from the entire city—an absurdity which the council could hardly have intended. *Salmen v. City of St. Paul,* 281 N.W.2d 355 (Minn.1979). If the term "drive-in" is consistently described according to its ordinary meaning, a restaurant with a drive-thru window is a permitted use in a C–2 Commercial Zone. *State v. Simonsen,* 252 Minn. 315, 89 N.W.2d 910 (1958).

---

**3.** Ordinances are construed according to the recognized principles of statutory construction.

■ Furthermore, such a construction comports with the city's interpretation of its zoning ordinance. The city council approved the McDonald's application as a permitted use. Although the city's action is not determinative, its interpretation is entitled to some weight. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980).

■ Finally, a zoning ordinance is in derogation of the common law and should be construed strictly against the city and in favor of the property owner. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d at 608. 3 R. Anderson, *American Law of Zoning*, § 16.02 at p. 4 (2d ed. 1977). To be effective any restriction on land use must be clearly expressed. We conclude, therefore, that the McDonald's restaurant with drive-thru window, as proposed, is a permitted use.

■ CERA contends, however, that even if the proposed use is permitted, the council's approval is invalid because the council did not make specific findings that (1) the proposed use would be consistent with the public health, safety, and general welfare, and (2) the proposed use would be consistent with the City's comprehensive plan. We find no merit in this contention and hold that approval, subject to McDonald's compliance with the requirements of the Chanhassen ordinances, was proper.

■ The zoning ordinance defines a permitted use as "a use which may be lawfully established in a particular district or districts, provided it conforms with all requirements, regulations and performance standards of such district." Chanhassen, Minn., Zoning Ordinance 47, § 4.02 (1972). The proviso demonstrates that the council's review of an application for a permitted use need go only to the applicant's compliance with the specific "requirements, regulations and performance standards" prescribed by the ordinance. Subject to such compliance, approval of a permitted use follows as a matter of right. *Cf. Zylka v. City of Crystal*, 283 Minn. 192, 167 N.W.2d 45 (1969).

■ A conditional or special use permit may be denied for reasons relating to public health, safety, and general welfare. Authorization of a given use by special or conditional use permit reserves to the city the discretion to consider the proposed use in the light of the general welfare and the city's planning goals. Nevertheless, denial of a conditional use must be based on something more concrete than neighborhood opposition and expressions of concern for public safety and welfare. *C.R. Investments, Inc. v. Village of Shoreview*, 304 N.W.2d 320 (Minn.1981); *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865 (Minn.1979); *Inland Construction Co. v. City of Bloomington*, 292 Minn. 374, 195 N.W.2d 558 (1972). On the record before us, for example, the non-specific testimony that the proposed McDonald's poses potential traffic hazards at the intersection of Dakota Avenue with Highway 5 cannot be said to rebut the city engineer's testimony that the intersection could handle the anticipated traffic.

On the other hand, when a city designates a specific use as permissible in a particular zone or district, the city has exercised its discretion and determined that the permitted use is consistent with the public health, safety, and general welfare and consonant with the goals of its comprehensive plan. Until the district is rezoned or the zoning ordinance is either amended or successfully challenged, that determination is conclusive.

We have also examined CERA's other contentions, including the contention that the city must apply the goals and objectives set out in its comprehensive plan as the criteria for approval of the requested subdivision of Outlot 2. We note only that CERA's objections do not focus on the concerns addressed in the subdivision ordinance, such as roads, sidewalks, and drainage. Rather, those objections go to McDonald's proposed *use* of the property—a matter specifically addressed in the zoning ordinance.

The city council's approval of the McDonald's proposed restaurant with a drive-

thru window as a permitted use of a portion of Outlot 2 was proper. We remand for an order directing issuance of the building permit authorized by the city council.

Reversed and remanded with instructions.

SIMONETT, Justice (concurring specially).

I join in the court's opinion but cannot subscribe to the rule that zoning ordinances are to be strictly construed against the municipality, as stated in the majority opinion and in *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980). "Not so very long ago," wrote Justice Holt in 1920, "there would have been a revolt against restricting a property owner in the full use of his lot to the street line." *State ex rel. Twin City Building & Investment Co. v. Houghton*, 144 Minn. 1, 17, 176 N.W. 159, 161 (1920) (opinion on rehearing). This was because there was, in the early part of this century, a strong belief, as Justice Dibell stated in his dissent in *Houghton*, in "the fundamental principle that one may use and enjoy his property as best suits his convenience, so long as no unnecessary injury is done to his neighbor." *Id.*, 144 Minn. at 23, 176 N.W. at 164. It was in this milieu, it seems to me, that the rule, "a zoning ordinance is in derogation of the common law and should be construed strictly against the city and in favor of the property owner," emerged. Surely the underpinning for this rule of strict construction no longer exists. If the common law is an evolving concept, today it is better illustrated by, to give just one example, the legislative statement of policy in Minn.Stat. § 462.351 (1982) which seeks to promote comprehensive municipal planning for land development.

I would abandon the rule of strict construction for zoning ordinances. In this appeal, however, abandonment of the rule does not, in my opinion, require a different result and so I join the court's opinion.

WAHL, Justice (concurring specially).

I join the special concurrence of Justice Simonett.