David R. and Patricia B. ODELL,
Appellants,

v.

CITY OF EAGAN, Minnesota,
Respondent.

No. C8–83–1623.

Court of Appeals of Minnesota.

May 8, 1984.

Daniel J. Beeson, South St. Paul, for appellant.

David G. Keller, Eagan, for respondent.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

Appellants submitted applications for waiver of plat and for preliminary plat approval to the Eagan City Council, with the intent of subdividing their residential lot. Both applications were denied by the council after separate hearings. The trial court dismissed appellants' subsequent declaratory judgment action, and denied their motion for amended findings. Appellants claim their applications were improperly denied and that they are entitled to compensatory damages under 42 U.S.C. §§ 1983, 1988 (1976). We reverse and remand.

## FACTS

Appellants David and Patricia Odell own a one-acre lot in the City of Eagan. The lot is located in the McCarthy Ridge Addition which consists of twelve comparably sized lots, and is zoned for residential use. An oversized detached garage sits near one corner of the lot, approximately twelve feet from the lot line.

The Odells purchased the lot in March, 1982, with the intention of subdividing it into two lots. Prior to purchasing the lot, the Odells spoke with the Eagan city planner, and later met with the city administrator. Both officials indicated the proposed split met city ordinance requirements. The city planner advised appellants of the proper procedures to receive approval of their plans. One alternative is to request a waiver of plat, which waives the subdivision requirements. A more costly method

is to file a preliminary plat for approval as a new subdivision. Under both methods, proposals are first considered by the Advisory Planning Commission. The commission issues a recommendation to the City Council, which makes the final decision.

Parcel One of the proposed subdivision includes the existing home and consists of 26,830 square feet. Parcel Two includes the existing detached garage, and consists of 16,682 square feet. City ordinance requires a minimum 12,000 square foot lot size. City ordinance also requires a thirty foot side yard setback from public streets. The garage does not conform to the setback, but was grandfathered in as an acceptable nonconformance in existence at the time the ordinance was passed.

The Eagan city planning staff reviewed the Odells' application for waiver of plat in May, 1982. They issued a report to the Advisory Planning Commission that did not indicate any deficiencies in the proposal.

The commission then held a public hearing. Owners of other McCarthy Ridge lots appeared in opposition to the waiver. They raised concerns about the character of the neighborhood and restrictive covenants which prohibited lots of less than one acre. The commission voted against recommendation of the waiver, referring to the above reasons and indicating no hardship was shown.

At the city council hearing, the Odells stated that there was hardship involved in the cost of platting for such a small subdivision, and that David Odell's heart condition restricted their ability to maintain such a large lot. Neighbors again protested, and submitted a petition. The petition stated that the proposed subdivision would destroy the character of the area, would set a precedent for future splits resulting in increased density and related problems, that restrictive covenants prohibited lots less than one acre in size, and that the Odells were motivated by financial gain, not any true hardship. The council denied the waiver, suggesting that a preliminary plat would be a better method. Council minutes note the above objections, emphasizing that the proposal appeared to change the character of the neighborhood, the precedent issue appeared important, and that no hardship was shown.

At the same meeting, the council granted a waiver of plat for a single-family residential lot split in another addition. This one required a variance for the smaller lot, which was under the 12,000 square foot minimum. The only hardship shown was that the lot was larger than necessary for a home. There were no objections by neighbors.

In August, 1982, the city planner reviewed the Odells' subsequent application for preliminary plat approval. His report indicated the plat met minimum subdivision regulations. After a hearing, the Advisory Planning Commission did not recommend approval.

Neighbors again spoke in opposition at the city council hearing in September. For the first time, it was noted that the garage would face the probable front lot line of the new Parcel Two, and would violate that thirty foot setback.

In response to the council's request, the city attorney issued an opinion stating that "the Council does not have a good basis for denial of the plat in relation to the standards set by any of the ordinances". He advised any denial would have to be based on a violation of the intent of the Subdivision Ordinance, and possibly the uncertainty of the restrictive covenants issue. The Odells submitted legal opinions that the covenants had expired.

On October 5, 1982, the council denied the Odells' application for preliminary plat approval, and on October 19 adopted a formal resolution incorporating all previous objections.

The Odells filed a declaratory judgment suit alleging the denials were arbitrary and capricious. At trial, a former city council member testified that the only hardship usually required for a waiver of plat in a single lot split was the cost of platting. The Odells presented expert testimony that there would be no adverse effect on the

character of the neighborhood. They noted that the city had granted six waivers for residential lot splits between 1979 and 1982, denying only two, including the Odells'. The other denial was based on danger due to the location of a gas pipeline and failure to show hardship. The specific hardship was never expressed when waivers were granted.

The trial court found the denials reasonable and dismissed the suit. The court further denied plaintiffs' motion for amended findings and conclusions of law, indicating that the sole reason for his decision was the garage, as a nonconforming structure.

## ISSUES

1. Whether the Eagan City Council's denial of appellants' application for preliminary plat approval based on the existence of the nonconforming garage was reasonable.

2. Whether the Eagan City Council's denial of appellants' application for waiver of plat for a residential single lot split based on lack of hardship was reasonable.

3. Whether appellants are entitled to damages, costs and attorney's fees pursuant to 42 U.S.C. § 1983 and § 1988.

## ANALYSIS

1. In reviewing zoning decisions of local governing bodies, this court makes an independent examination of the record to reach its own conclusions, with no special deference granted to the trial court's findings. *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865 (Minn.1979).

The goal of review is to determine whether the municipality's action was reasonable. *Honn v. City of Coon Rapids*, 313 N.W.2d 409 (Minn.1981). Reasonableness is measured by standards in the local ordinance, not the state statutes. *White Bear Docking and Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174 (Minn. 1982). Municipalities are constitutionally required to treat similarly situated people alike in applying those standards. *Northwestern College*, 281 N.W.2d at 869.

If reasons for the decision are given, the court examines the record to see if the reasons are legally sufficient and have a factual basis. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503 (Minn.1983). The record includes relevant evidence received at trial. *Honn*, 313 N.W.2d at 416. A municipality has broad discretion in zoning matters, particularly in enacting a zoning ordinance or rezoning. However, when variances and other special uses are considered, a city council funcions in a quasi-judicial capacity, and is subject to more extensive judicial oversight. *Id.* at 417. Once the ordinances are enacted, less weight is given to the municipality's legal interpretations of its ordinances than on questions of fact. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604 (Minn.1980).

When a "subdivision ordinance specifies standards to which a proposed plat must conform, it is arbitrary as a matter of law to deny approval of a plat which complies in all respects with the subdivision ordinance". *National Capital Corp. v. Village of Inver Grove Heights*, 301 Minn. 335, 337, 222 N.W.2d 550, 552 (1974) (quoting *Hay v. Township of Grow*, 294 Minn. 1, 5, 206 N.W.2d 19, 22 (1973)).

The primary reason for denial of the preliminary plat application was the nonconforming garage. This is apparent in the transcript of the council hearing. Council member Egan moved to deny the application based on three considerations: 1) the nonconforming garage, 2) aesthetic considerations, and 3) the restrictive covenants. After some discussion, he agreed to delete the second and third reasons to focus on the primary objection of the garage.

The resolution denying the plat, signed two weeks later, resolves to deny the application "based upon those reasons cited above and including the fact that the garage ... is currently a nonconforming use and to authorize a split of the lot ... would cause an expansion of a nonconforming use

... further that a new nonconforming use would be created ..." Resolution, Eagan City Council, dated October 5, 1982, signed October 19, 1982.

In its Answers to Plaintiffs' Requests for Admissions, Number 14, Eagan admits that "The preliminary plat meets all the minimum standards of the Eagan zoning ordinance, except for the opinion of the City Council that [the] preliminary plat results in a new non-conforming use in violation of the Zoning Ordinance". Respondents' counsel's brief and oral argument focused on the garage as the prime reason for denial.

Eagan argues that the garage is a nonconforming use, which loses its protected status with the creation of a new lot, requiring a variance. The Odells argue that it is a nonconforming structure whose existence is functionally unrelated to the lot split. City Planner Dale Runkle admitted at the declaratory judgment trial that the garage is not a nonconforming use.

The terminology is significant. The ordinance distinguishes between nonconforming structures and uses. EAGAN MINN. Code § 52.05, subd. 2(ZZ), (AAA). It restricts nonconforming uses in section 52.06, subd. 3, but does not regulate nonconforming structures.

■ The interpretation of an existing zoning ordinance is a question of law for a court to decide. *Amcon Corp. v. City of Eagan,* 348 N.W.2d 66 (Minn.1984). To interpret terms in the ordinance, a court looks at their plain and ordinary meaning. *Frank's,* 295 N.W.2d at 608. "Zoning ordinances should be construed strictly against the city and in favor of the property owner." *Id.* The court uses the least restrictive interpretation, protecting the rights of the property owner.

■ It is not the building's use that does not conform, but its location. Garages are a permitted use. The split does not change the nonconformance in any way. While it may become a front yard setback rather than a side yard, it remains in the same location, is equally close to the

same public street, and is still used as a garage.

We find the garage is a nonconforming structure as defined in the ordinance. The building itself retains the benefit of the grandfather clause, and it is not conditioned on its surroundings.

■ In the resolution, the council cited the concerns of the neighbors over the character of the area, the precedential value of permitting a lot split, and the restrictive covenants. The restrictive covenants are private matters to be resolved by the parties to the covenant, and not the city. Aesthetic considerations are generally not a sufficient basis alone. *See White Bear,* 324 N.W.2d at 177–78. Nor is neighborhood opposition. *Northwestern College,* 281 N.W.2d at 869.

These concerns relate to the stated purpose of the subdivision ordinance. The Eagan Subdivision Ordinance, section 10.01, subd. 1, states that the purpose of the ordinance is to promote an attractive and stable community. This is a vague statement. At least one court has held that similar language in a preamble "cannot serve as an independent source of authority for disapproving plats." *Southern Coop. Dev. Fund v. Driggers,* 696 F.2d 1347, 1351 (11th Cir.1983).

■ Even if the stated purpose could be used as a standard, there is not enough evidence to support those concerns to reasonably deny the preliminary plat application on that basis. The Odells presented testimony at trial from a city planning consultant that there would be no adverse effect on the area. A real estate appraiser and former Eagan council member concurred. The only evidence regarding damage to the area came from neighbors emphasizing reliance on the restrictive covenants.

■ While we remain respectful of the discretion given to local governing bodies, we find that in this case the Eagan city council did not have a reasonable basis on which to deny the Odells' preliminary plat

application when it met the requirements of the Eagan subdivision ordinance.

2. Because we find the preliminary plat was improperly denied, we do not reach the issue of the denial of the waiver of plat.

3. The Odells further claim they were denied their rights of due process, alleging that the denial of the preliminary plat was arbitrary and capricious.

A § 1983 action has two elements. First, a person must be deprived of a right secured by the United States Constitution and laws by another person. Second, it must be done under color of law. Local governmental units are persons for purposes of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In any action to enforce civil rights under § 1983, a court, in its discretion, may allow attorney's fees to the prevailing party under § 1988.

The only cognizable right involved here is the alleged deprivation of property without due process of law, in violation of the Fourteenth Amendment. To prevail on this claim, plaintiffs must first establish that they possessed a legitimate claim of entitlement to the preliminary plat approval; a unilateral expectation is not sufficient. *Molgaard v. Town of Caledonia*, 527 F.Supp. 1073 (E.D.Wis.1981); *Tumulty v. City of Minneapolis*, 511 F.Supp. 36 (D.Minn.1980).

There is no constitutionally protected interest in state law procedures. *Vruno v. Schwarzwalder*, 600 F.2d 124 (8th Cir.1979); *Molgaard*, 527 F.Supp. at 1080; *Tumulty*, 511 F.Supp. at 38. The due process clause does not convert every statutory right into a constitutional entitlement. *Vruno*, 600 F.2d at 131. Procedures such as the Eagan preliminary plat application process are designed to prevent arbitrary actions, but there is no property interest in being fairly considered in the process. *Tumulty*, 511 F.Supp. at 37. The property interest is the award of the preliminary plat approval itself. *Molgaard*, 527 F.Supp. at 1081.

Further, the Odells were not denied due process in the decision-making process. They had full hearings before the council and the planning commission. They had the opportunity to present witnesses and other evidence. *Contos v. Herbst*, 278 N.W.2d 732, 742 (Minn.1979). The council fully expressed all objections considered by them and stated their reasons for refusing approval. Although the council's reasons for denying plat approval were legally insufficient, it does not amount to a deprivation of property or a denial of due process.

Since plaintiffs do not prevail on their § 1983 action, they are not entitled to attorney's fees under § 1988.

### DECISION

For the above reasons, we remand to the Dakota County District Court for the issuance of an order directing the Eagan City Council to grant plaintiffs' preliminary plat approval.

Reversed and remanded.