**GOOD NEIGHBOR CARE CENTER, et al., Respondents,**

v.

**The CITY OF LITTLE CANADA, et al., Appellants.**

**No. C0–84–606.**

Court of Appeals of Minnesota.

Nov. 6, 1984.

K. Craig Wildfang, Wildfang, Rude, McIntosh, Murray, Chartered, Minneapolis, for respondents.

Frederick C. Brown, Larry D. Espel, Fred L. Morrison, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Minneapolis, Thomas M. Sweeney, Sweeney, O'Connor & LeMay, St. Paul, for appellants.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

LANSING, Judge.

The City of Little Canada appeals from a partial summary judgment declaring a residential facility for the aged to be a permitted use in an R–1 single-family residential district under the City's zoning ordinance and permanently enjoining the City from refusing to issue a building permit. We affirm because the home, although not a permitted use under the Little Canada ordinance, is a permitted single-family use under Minn.Stat. § 462.357, subd. 7 (1982), which pre-empts the ordinance.

## FACTS

Respondent Good Neighbor Care Centers is a corporation that owns a number of nursing homes. Following a trend toward community-based residential alternatives to traditional nursing homes, Good Neighbor planned to develop a four-person home for elderly residents, to be located in a residential district. A state nursing home license would not be required because the proposed home would have fewer than five residents. *See* Minn.Stat. §§ 144A.01, subd. 5, .02, subd. 1 (1982).

The plans include living quarters for two houseparents on the lower, or basement, level, and a first floor that would have four individual bedroom suites for the residents plus common living room, dining room, and kitchen facilities. The houseparents would prepare meals. The home would provide 24-hour nursing care and daily visits by a registered nurse. Good Neighbor obtained a Board and Lodging license for the proposed home from the Ramsey County Public Health Department and obtained a commitment from the County Public Health Nursing Service to periodically survey the home "for appropriate resident care."

In April 1983 the Little Canada building inspector gave preliminary approval for the home, but the City Council delayed issuing a building permit until after a public hearing. Public comment indicated concern about the home's commercial nature and the lack of control over potential future purchasers. The Council denied Good Neighbor's application for a permit at a September 14, 1983, council meeting on the basis that the home is not a compatible use in an R–1 zoning district and not a permitted use under the municipal ordinance.

## ISSUES

1. Is the Good Neighbor home a permitted single-family residential use under the Little Canada zoning ordinance?

2. Does the home qualify as a "state licensed residential facility," statutorily defined as a permitted single-family residential use?

## ANALYSIS

### I

The trial court found that the Good Neighbor home would be a permitted use

under Little Canada's zoning ordinance. The home was to be built in a district that is zoned R–1 residential, which Little Canada limits primarily to "single family detached dwellings." Little Canada, Minnesota, Zoning Ordinance § 905.020.A (April 1980). A single-family dwelling is defined as "[a] dwelling unit designed exclusively for occupancy by one (1) family." *Id.* § 902.010.A.51. "Family" is defined as follows:

> One (1) or more persons each related to the other by blood, marriage, adoption, *or foster care,* or a group of not more than three (3) persons not so related maintaining a common household and using common cooking and kitchen facilities.

*Id.* § 902.010.A.51 (emphasis added).

Relying on the Minnesota Supreme Court's opinion in *Costley v. Caromin House, Inc.,* 313 N.W.2d 21 (Minn.1981), the trial court found the Good Neighbor home to be a familial arrangement within the Little Canada ordinance. In *Costley* the Minnesota Supreme Court determined that a group home for six retarded adults and two resident houseparents was a single-family dwelling under a municipal zoning ordinance that defined "family" as "[o]ne or more persons occupying a premises and living as a single housekeeping unit." *Costley,* 313 N.W.2d at 24 (quoting Two Harbors, Minnesota, Ordinance No. 253, Art. 2, sec. 1.16 (Oct. 15, 1979)).

The Little Canada ordinance limits households of unrelated persons to three. The trial court relied on the inclusion of foster care relationships to find that the four Good Neighbor home residents and two houseparents would comprise a family within the meaning of the ordinance. Courts generally strive to construe the terms of ordinances according to their ordinary meanings. *See Chanhassen Estates*

*Residents Association v. City of Chanhassen,* 342 N.W.2d 335, 339 (Minn.1984). The term "foster care" ordinarily refers to the placement of children in foster homes. Although the term has a broad meaning within that context, *see In re Estate of Norman,* 209 Minn. 19, 25–26, 295 N.W. 63, 66–67 (1940), we do not believe "foster care" in its ordinary meaning can be extended to the proposed Good Neighbor home.

**II**

Good Neighbor also contends that the proposed home is a permitted use under Minn.Stat. § 462.357, subd. 7 (1982). At the time of the trial court's decision that statute provided as follows:

> *Permitted single family use.* In order to implement the policy of this state that mentally retarded and physically handicapped persons should not be excluded by municipal zoning ordinances from the benefits of normal residential surroundings, a state licensed group home or foster home serving six or fewer mentally retarded or physically handicapped persons shall be considered a permitted single family residential use of property for the purposes of zoning.

Minn.Stat. § 462.357, subd. 7 (1982).[1]

The proposed Good Neighbor facility qualifies as a group home serving six or fewer physically handicapped persons. Little Canada disputes this qualification, arguing that the elderly are not "physically handicapped persons" within the meaning of Minn.Stat. § 462.357, subd. 7. The State licenses homes for the elderly separately from facilities for other physically handicapped persons. Under state regulations governing the operation of residential facilities and services for the physically handicapped, a "physical handicap" does not in-

---

**1.** The 1984 legislature amended § 462.357, subd. 7, to apply to state-licensed "residential facilit[ies]." Laws 1984, ch. 617, § 7. This language conforms to that of Minn.Stat. § 245.812, subd. 3 (1982). The amendment does not substantively alter the statute or affect its application to this case.

Under Minn.Stat. § 245.812, licensed residential facilities serving six or fewer persons are a permitted single-family residential use for purposes of zoning. The Good Neighbor home, however, is excluded under several provisions of this statute. *See* § 245.791 (1982).

clude disabilities that are the result of the normal aging process. Minn.Rules § 9570.-2200, subp. 7 (1983).

■ Although a distinction between the elderly and other physically handicapped persons may be legitimate in the licensing statutes, the distinction would not meet constitutional standards in the zoning exemption statute. A statutory classification must be germane to a lawful objective in order to comply with equal protection standards. *State by Spannaus v. Hopf*, 323 N.W.2d 746 (Minn.1982) (legislative classification must be rationally related to a legitimate governmental objective); *State v. Knox*, 311 Minn. 314, 322, 250 N.W.2d 147, 153 (1976). Good Neighbor stated to the City Council that all of the residents of the home would be physically handicapped. Although the issue is not squarely presented to us, we can discern no rational basis for upholding a legislative distinction between the elderly and other physically handicapped persons for purposes of local zoning restrictions on group homes. We decline to interpret the statute so as to make it subject to constitutional challenge. *See Port Authority of St. Paul v. Fisher*, 275 Minn. 157, 165, 145 N.W.2d 560, 567 (1966).

Little Canada further argues that even if the residents are considered physically handicapped, the facility is still not a permitted single-family use under § 462.357, subd. 7, because it is not *state*-licensed. The Good Neighbor home is the type of facility that would ordinarily require state licensure, but the legislature has exempted it from nursing home licensing requirements because it has fewer than five residents. *See* Minn.Stat. §§ 144A.01, subd. 5, .02, subd. 1 (1982). Consequently, the Good Neighbor home is not literally "state-licensed," nor can it be. However, it has obtained a residential lodging facility license from the county, under authority delegated · by the State Commissioner of Health. Minn.Stat. § 145.55, subd. 1 (1982). Good Neighbor has also contracted with the County Public Health Nursing Service to monitor the care it provides.

The legislative directive that facilities serving six or fewer persons shall be considered a permitted single-family use takes into consideration that the fewer the residents in the home, the more compatible the facility is with a residential neighborhood. Under Little Canada's interpretation, however, the more compatible facilities serving fewer than five persons would not constitute a permitted use, while the less compatible facilities serving five or six persons would. This interpretation severely constricts the effect of the statute.

Little Canada argues that the statute should be construed this way because the nursing home license that would be required for a facility serving five or six persons would protect the neighborhood. That license, however, is for the protection of nursing home residents rather than the neighborhoods in which they are located. Protective regulatory statutes should not be used as a basis for denying the protected group additional coverage under other statutes. The policy behind the statute allowing group homes or foster homes to be situated in residential districts despite municipal zoning ordinances is clearly set forth in the statute. Mentally retarded and physically handicapped persons should not be excluded from the benefits of normal residential surroundings.

■ We conclude that the construction urged by Little Canada is contrary to the basic philosophy of the statute and achieves an unreasonable result. It would leave only a narrow range of facilities protected by a remedial statute, and it would permit the less compatible facilities while excluding the more compatible. Although the literal language can be read to support Little Canada's position, we must construe statutory language to avoid reaching an unreasonable or absurd result. *See* Minn. Stat. § 645.17(1) (1982); *Spaeth v. City of Plymouth*, 344 N.W.2d 815, 822–23 (Minn. 1984). We decline to hold that the Good Neighbor home is not a permitted use. It holds a derivative state license and is exempted from the other state licensing requirements. It falls squarely within the

classification of those facilities the legislation sought to protect and should not be excluded because of a licensing exemption that was meant to be for its benefit.

## DECISION

A proposed group home for four elderly residents to be cared for by live-in house-parents is not included under the term "foster care" in Little Canada's zoning ordinance. The home is, however, a permitted single-family use under Minn.Stat. § 462.357, subd. 7 (1982), allowing certain group homes serving six or fewer residents within single-family residential districts.

Affirmed.