**PTL, LLC, Relator,**

v.

**CHISAGO COUNTY BOARD OF COMMISSIONERS, Respondent.**

**No. C5–02–1170.**

Court of Appeals of Minnesota.

Feb. 18, 2003.

Mark Duea, Geck & Duea, L.L.C., White Bear Lake, MN, for relator.

Paul D. Reuvers, Kafi C. Linville, Iverson Reuvers, L.L.C., Bloomington, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, MINGE, Judge, and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

By writ of certiorari, relator PTL, LLC appeals from the Chisago County Board of Commissioners' denial of preliminary-plat approval. Relator argues that it is entitled to approval as a matter of right, because its preliminary plat satisfies the requirements of the zoning and subdivision ordinances in all respects. Alternatively, relator argues that (1) the record does not support the board's determination that the proposed development is inefficient, poorly designed, or incompatible with surrounding land uses, and (2) the board improperly relied on after-the-fact rationalizations not connected with the actual basis for denial of preliminary-plat approval. We reverse and remand.

## FACTS

Relator PTL, LLC (PTL) is a real-estate development company seeking to develop approximately 70 acres of land located in a district zoned "agricultural" in Chisago County. To that end, PTL submitted an application for preliminary approval of a plat consisting of 14 five-acre lots to be used for residential housing. The county's zoning ordinance permits single-family dwellings in agricultural districts at a maximum density of one dwelling per five-acre lot. Chisago County, Minn., Zoning Ordinance § 5.06(B)(10) (1997). Accordingly, the Fish Lake Township Board and Plat Review Commission recommended approval of PTL's preliminary plat.

In April 2002, PTL presented its preliminary plat before the Chisago County Planning Commission. At the commission's monthly meeting, Environmental Services Director Marion Heemsbergen stated that, although the proposed lots met the dimensional requirements of the Chisago County Zoning Ordinance, the planning commission preferred the "cluster or cove" design required for smaller lots to the "cookie cutter" design proposed by PTL. *See id.* § 7.18(B) (requiring cluster design for lots smaller than five acres). Heemsbergen expressed concern that because the proposed development was located in the middle of open farmland, it appeared to conflict with the goals and policies of the Chisago County Comprehensive Guide Plan, a "policy guide for managing growth in Chisago County." Chisago County, Minn., Comprehensive Guide Plan, at ii (1995).[1]

In addition to Heemsbergen, neighbors expressed concern that approval of the preliminary plat would result in increased traffic, unsightly lawns, lower property values, the sale of neighboring farms, and the loss of traditionally farmed agricultural

1. Among other things, the comprehensive guide plan seeks to protect long-term agriculture, to prevent incompatible land uses, and to encourage rural residential housing in areas where support services and market conditions exist. *Id.* at 28–29.

land. One neighbor worried that a proposed road would create a dead end at her field and cause problems with trespassers.

In response to these concerns, PTL indicated that the land was sand rather than prime farmland, and that it had saved large trees to build a buffer between the proposed development and neighboring properties. PTL also indicated that because the plat was close to highway 95 and the city of Cambridge, it was compatible with the comprehensive guide plan's goal of providing low-density housing near a major highway that is close to schools and other towns.

The planning commission concluded that, although the preliminary plat met the dimensional requirements of the zoning ordinance, it would result in conflicting land uses and the unnecessary conversion of farmland, in violation of the comprehensive guide plan. Accordingly, it recommended that approval be denied. PTL declined an opportunity to reconfigure its preliminary plat, opting instead to submit it to the Chisago County Board of Commissioners.

In May 2002, PTL presented its preliminary plat to the board. Once again, Heemsbergen stated that, although the preliminary plat "appeared to be perfectly legal, dimensionally speaking," it was poorly designed and incompatible with surrounding land uses. The board asked PTL to consider reconfiguring the proposed plat with a clustering of building sites and "a more aesthetically pleasing road with a curved design." PTL agreed to resubmit its application to the planning commission.

At the planning commission's next meeting, PTL presented a letter from an assistant county surveyor, stating that the preliminary plat met all the requirements of the ordinance. PTL told the commission that its own surveyor and other professional consultants had indicated that the prop-

erty did not lend itself to a cluster design. PTL also stated that the Fish Lake Township engineer had recommended against the requested curved road. Noting that nothing had changed since the previous meeting, the planning commission recommended denial once again.

In June 2002, the board of commissioners considered PTL's application a second time and asked Heemsbergen to prepare findings supporting its decision to deny it. The board later adopted Heemsbergen's findings and conclusions and denied approval of the preliminary plat by a 3–2 vote, reasoning that the proposed development (1) was incompatible with existing land uses, in violation of section 1.02(I) of the Chisago County Subdivision Ordinance; (2) would negatively impact the surrounding communities; (3) was inefficient and poorly planned, in violation of section 1.02(C) of the subdivision ordinance; and (4) failed to implement the Chisago County Comprehensive Guide Plan, in violation of section 1.02(I) and (J) of the subdivision ordinance. The board also concluded that (1) the proposed plat contained no buffer from the surrounding incompatible uses; (2) the proposed lots did not meet the minimum dimensional requirements; (3) the preliminary plat failed to show the required setback and calculations showing no net increase of run-off leaving the site; and (4) the proposed road would require ongoing maintenance, would create three double-fronted lots, and could negatively impact an existing house.

This appeal followed. At oral argument, the board withdrew the bases for denial relating to the buffer, the minimum dimensional requirements, the setback and run-off calculations, and the proposed road. Accordingly, we consider only reasons relating to the incompatibility between the proposed and existing land uses, the ineffi-

ciency of the proposed design, and the preliminary plat's failure to implement the comprehensive guide plan.

## ISSUES

I. Was the board of commissioners' decision to deny approval of a preliminary plat based on legally insufficient reasons, where the preliminary plat proposed a permitted land use and complied with the regulatory standards prescribed for that use?

II. Did the comprehensive guide plan provide the board of commissioners with an independent source of authority for denying approval of a preliminary plat that proposed a permitted use and complied with the regulatory standards specified for that use?

## ANALYSIS

■ On a writ of certiorari, our review is limited to determining whether a county board of commissioners had jurisdiction; whether its proceedings were fair and regular; and whether its decision was unreasonable, without evidentiary support, or based on an incorrect theory of law. *BECA of Alexandria, L.L.P. v. County of Douglas,* 607 N.W.2d 459, 462 (Minn.App. 2000). Because local officials have broad discretion in deciding whether to grant or deny a proposed land use, we give great deference to their land-use decisions and will reverse only in rare instances where the decision lacks a rational basis. *Super-America Group, Inc. v. City of Little Canada,* 539 N.W.2d 264, 266 (Minn.App.1995), *review denied* (Minn. Jan. 5, 1996). A decision lacks a rational basis if it is unsupported by substantial evidence in the record, premised on a legally insufficient reason, or based on subjective or unreasonably vague standards. *See C.R. Invs., Inc. v. Vill. of Shoreview,* 304 N.W.2d 320, 324–25 (Minn.1981); *BECA,* 607 N.W.2d at

463; *Hurrle v. County of Sherburne,* 594 N.W.2d 246, 249 (Minn.App.1999); *Good Value Homes, Inc. v. City of Eagan,* 410 N.W.2d 345, 348 (Minn.App.1987).

## I.

■ PTL first argues that the board of commissioners exceeded its authority by denying its application for approval of a permitted use on the basis that the proposed development was incompatible with existing land uses and not well planned. Alternatively, PTL argues that the board's determination that the proposed development is incompatible with existing land uses and poorly planned lacks evidentiary support. We agree that the board exceeded its authority in denying PTL's application for preliminary-plat approval and that its denial, therefore, was unreasonable.

■ Under Minnesota law, when an ordinance specifies minimum standards to which subdivisions must conform, local officials lack discretionary authority to deny approval of a preliminary plat that meets those standards. *Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 340 (Minn.1984); *Nat'l Capital Corp. v. Vill. of Inver Grove Heights,* 301 Minn. 335, 337, 222 N.W.2d 550, 552 (1974); *Hay v. Township of Grow,* 296 Minn. 1, 5, 206 N.W.2d 19, 22 (1973); *Good Value Homes,* 410 N.W.2d at 348; *Odell v. City of Eagan,* 348 N.W.2d 792, 796 (Minn.App.1984); *see also* Laurie Reynolds, *Local Subdivision Regulation: Formulaic Constraints in an Age of Discretion,* 24 Ga. L.Rev. 525, 530 & n. 24 (1990) (noting that a majority of states, including Minnesota, adhere to the rule that local governments have no discretion to deny subdivision approval to proposed plats that conform to the specific prerequisites of a subdivision ordinance). Because a "permitted use" is a use that may be lawfully established if it conforms to the

specified regulatory standards, a local government reviews an application for a permitted use to determine only whether the proposed use complies with those standards. *Chanhassen Estates,* 342 N.W.2d at 340; *Chase v. City of Minneapolis,* 401 N.W.2d 408, 413 (Minn.App.1987).

The Chisago County Zoning Ordinance expressly authorizes single-family dwellings in agricultural districts at a maximum density of one dwelling per five-acre lot. Chisago County, Minn., Zoning Ordinance § 5.06(B)(10) (1997). The ordinance requires a 300–foot–minimum lot width and a minimum buildable area of one acre. *Id.* § 5.15.

PTL sought approval to subdivide the land into 14 five-acre lots, each with a 300–foot–minimum width and a minimum buildable area of one acre, to be used for single-family dwellings. Because PTL's preliminary plat proposed a permitted use, the board of commissioners' authority was limited to reviewing PTL's application to determine only if the preliminary plat complied with the standards the zoning and subdivision ordinances prescribe for single-family dwellings in an agricultural district. *See Chanhassen Estates,* 342 N.W.2d at 340; *Chase,* 401 N.W.2d at 413.

The board of commissioners conceded that the proposed lots "appeared to be perfectly legal, dimensionally speaking." But it denied preliminary-plat approval nonetheless, citing concerns about the proposed development's negative land-use impacts. To support its denial, the board of commissioners relied on sections 1.02(C) and (I) of the Chisago County Subdivision Ordinance. Section 1.02(C) provides that one of the purposes of the subdivision ordinance is to "[e]ncourage well-planned, efficient, and attractive subdivisions." Chisago County, Minn., Subdivision Ordinance § 1.02(C) (1999). Section 1.02(I) lists the protection and promotion of compatible land uses as one of the ordinance's stated purposes. *Id.* § 1.02(I).

The board exceeded its authority in denying PTL's preliminary-plat approval for two reasons. First, sections 1.02(C) and (I) are merely general statements of purpose; they do not set forth clear and objective standards a developer must meet to obtain subdivision approval. For that reason, they do not provide a legally sufficient basis to reject a subdivision plan. *Odell,* 348 N.W.2d at 797 (concluding that provision stating that purpose of subdivision ordinance was "to promote an attractive and stable community" was vague and could not serve as independent basis for disapproving preliminary plat).

■ Regulatory standards must be sufficiently precise to ensure the application of objective standards to all similarly situated property, to adequately inform landowners of the requirements they must satisfy to gain subdivision approval, and to allow a reviewing court to evaluate noncompliance. *See Local Subdivision Regulation, supra,* 24 Ga. L.Rev. at 536; *see also Kaufman v. Planning and Zoning Comm'n of the City of Fairmont,* 171 W.Va. 174, 298 S.E.2d 148, 154–55 (1982) (reversing denial of preliminary-plat approval on ground that statute requiring local government to determine whether distribution of traffic and population promoted "harmonious development" lacked specificity necessary to ensure fair administration and put subdividers on notice of requirements they must satisfy to obtain subdivision approval); *Goodman v. Bd. of Comm'rs of the Township of South Whitehall,* 49 Pa.Cmwlth. 35, 411 A.2d 838, 841 (1980) (holding that subdivision plan could not be rejected on basis of subdivision ordinance statement of purpose declaring that subdivision must be coordinated with existing developments so that "area as a whole may be developed harmoniously").

Like the regulation in *Odell,* sections 1.02(C) and (I) lack the specificity necessary to serve as the basis for denying preliminary-plat approval. The board of commissioners' denial of approval, therefore, was based on unreasonably vague standards.

■ Second, when local officials enact ordinances designating a specific use as permitted in a particular district, they determine by implication that the permitted use is consistent with existing land uses. *See Chanhassen Estates,* 342 N.W.2d at 340. Thus, when the board of commissioners enacted the county's zoning ordinance and designated single-family dwellings as a use permitted in agricultural districts, the board of commissioners implicitly determined that single-family dwellings are consistent with existing land uses, provided they comply with the specific requirements prescribed for that use. That determination is conclusive until the board of commissioners rezones the land in question or amends the zoning ordinance. *Id.*

To allow the board to deny approval of a preliminary plat that proposes a permitted use and complies with the regulations specified for that use would, in effect, allow the board to arbitrarily amend the zoning ordinance simply by denying applications for subdivision approval. Such a practice would deprive landowners of adequate guidance in the preparation of preliminary plats and would allow capricious actions based on subjective criteria rather than express zoning provisions enacted to guide land-use decisions. *See County Builders, Inc. v. Lower Providence Township,* 5 Pa. Cmwlth. 1, 287 A.2d 849, 852 (1972) (stating that subdivision ruling that effectively amends zoning ordinance improperly allows local government to "hold in reserve unpublished requirements capable of general application for occasional use"). Thus, we conclude that the board of com-

missioners' denial of approval lacked a rational basis.

Because, as a matter of law, local officials must approve a preliminary plat that proposes a permitted use and complies with the regulatory standards specified for that use, the board of commissioners exceeded its authority in denying PTL's application for preliminary-plat approval on the basis that the proposed development was inconsistent with existing land uses and not well planned. The decision to deny preliminary-plat approval was based on legally insufficient reasons. To hold otherwise would undermine the legal doctrine that a subdivision plan that complies with applicable regulations must be approved as a matter of right.

**II.**

■ PTL also argues that the board of commissioners lacked legal authority to reject its application for preliminary-plat approval of a permissible land use on the basis that the preliminary plat failed to implement the goals and policies of the county's comprehensive guide plan. We agree.

Compatibility with the public's health, safety, and general welfare of the local government's comprehensive land-use plan is an appropriate consideration in approving an application for a *conditional* use. *See* Minn.Stat. § 394.22, subd. 7 (2002) (defining conditional use as use that may be allowed on finding that it conforms to county's comprehensive plan); *Hubbard Broad., Inc. v. City of Afton,* 323 N.W.2d 757, 763 (Minn.1982) (holding that city council's determination that proposed use was inconsistent with comprehensive plan justified denial of special-use permit); *SuperAmerica Group,* 539 N.W.2d at 267 (holding that incompatibility between proposed use and "definite and objective standards" in city's comprehensive plan

justified denial of conditional-use permit), *review denied* (Minn. Jan. 5, 1996). *But cf. Amoco Oil Co. v. City of Minneapolis,* 395 N.W.2d 115, 118 (Minn.App.1986) (holding that reliance on comprehensive plan as basis for denying conditional-use permit was improper where zoning ordinance did not list compliance with comprehensive plan as basis for denial).

■ In contrast, for a *permissible* use, the law recognizes that

when a city designates a specific use as permissible in a particular zone or district, the city has exercised its discretion and determined that the permitted use is consistent with the public health, safety, and general welfare and consonant with the goals of its comprehensive plan.

*Chanhassen Estates,* 342 N.W.2d at 340. But the board of commissioners denied PTL's application for approval of a preliminary plat that proposed a permitted use because the proposed use, although permitted, failed to implement the goals and policies of the comprehensive guide plan. In so doing, the board relied on sections 1.02(J) and 1.05 of the Chisago County Subdivision Ordinance. Section 1.02(J) lists the implementation of the comprehensive guide plan as a stated purpose. Chisago County, Minn., Subdivision Ordinance § 1.02(J). Section 1.05 requires that the subdivision of land "not be inconsistent with" the comprehensive guide plan. *Id.* § 1.05. Thus, whether the board exceeded its authority depends on whether sections 1.02(J) and 1.05 give the comprehensive guide plan regulatory effect.

Under Minnesota law, each county "has the power and authority to prepare and adopt" a comprehensive plan. Minn.Stat. § 394.23 (2002). The plan is to be implemented by official controls, including zoning and subdivision ordinances. *See id.* §§ .22, subd. 6; .24, subd. 1. The role of the comprehensive plan is different from

that of official controls. The comprehensive plan is "the guide for the future development of the county." *Id.* § .22, subd. 9. It contains "the policies, statements, goals, and interrelated plans for private and public land and water use, transportation, and community facilities." *Id.* It also contains recommendations for its execution. *Id.* Official controls, by contrast, "are the means of translating into ordinances all or any part of the general objectives of the comprehensive plan." *Id.* § .22, subd. 6.

The comprehensive guide plan adopted by the Chisago County Board of Commissioners similarly has an advisory role that is different from that of the official controls embodied in the zoning and subdivision ordinances. The preamble to the comprehensive guide plan defines the plan as a "policy guide" intended to be "general in nature" and to "serve as a growth management tool for the County." Chisago County, Minn., Comprehensive Guide Plan, at ii (1995). The preamble defines zoning and subdivision ordinances as the tools for implementing the goals and policies of the comprehensive guide plan. *Id.* (providing that "[i]mplementation of the plan will be accomplished through * * * the County's zoning and subdivision ordinances"). The county's subdivision ordinance, in turn, provides that the ordinances are "the means by which the county controls the land use outlined in the Comprehensive Guide Plan." Chisago County, Minn., Subdivision Ordinance, at i.

In denying preliminary-plat approval based on the conclusion that the proposed plat was inconsistent with the comprehensive guide plan, the board of commissioners failed to recognize the uniquely advisory role of the comprehensive guide plan and elevated it to the stature of the zoning and subdivision ordinances, both of which have the force of law. This constituted error for the following reasons.

First, giving the comprehensive guide plan regulatory effect ignores the statute, the subdivision ordinance, and the comprehensive guide plan itself, all of which define the plan as a policy guide to be implemented by official controls. A majority of jurisdictions treat comprehensive plans as advisory, notwithstanding ordinance provisions, such as the one before us, requiring that the subdivision of land be "consistent with" or "in accordance with" a comprehensive plan. *Cf.* Stuart Meck, *The Legislative Requirement that Zoning and Land Use Controls be Consistent with an Independently Adopted Comprehensive Plan: A Model Statute,* 3 Wash. U. J.L. & Pol'y 295, 297–306 (2000) (noting that despite the widespread adoption of the "consistently with" or "in accordance with" language in enabling acts, a majority of states treat comprehensive plans as advisory).

 Second, elevating the comprehensive guide plan to the level of zoning and subdivision ordinances ignores the stated purpose of the comprehensive guide plan, which is merely to guide the board in setting zoning standards. It is those zoning standards, implicit in the zoning and subdivision ordinances, that govern the board's decision making when reviewing a specific proposal. The zoning provisions at issue here permit the use of agricultural land for single-family dwellings at a maximum density of one dwelling per five-acre lot. *See* Chisago County, Minn., Zoning Ordinance § 5.06(B)(10). The standards established in the zoning ordinance are conclusive until the board rezones the district or amends the zoning ordinance through proper legislative channels. *See Chanhassen Estates,* 342 N.W.2d at 340.

Third, even if the comprehensive guide plan had the force of law, its provisions are "intended to be general in nature" and are thus legally insufficient as a basis for denying an application for preliminary-plat approval. *See* Comprehensive Guide Plan, at ii; *C.R. Invs., Inc.,* 304 N.W.2d at 327–28 (holding that provision in comprehensive plan requiring developer to demonstrate that proposed use "is consistent with the [comprehensive] plan's general intent and purpose" was unreasonably vague, subjective, and did not furnish ground for denial of special-use permit). The comprehensive guide plan in this case provides that the county's agricultural goals are to

> [p]rotect long term agriculture as a vital element in the County economy[,][p]revent the unnecessary conversion of prime farmland to non-farm uses[,][and][p]revent incompatible land uses in the agricultural areas.

Chisago County Comprehensive Guide Plan at 28. Like the provisions of the comprehensive plan in *C.R. Invs. Inc.,* the provisions of the Chisago County Comprehensive Guide Plan are unreasonably vague and subjective for the purposes of furnishing a basis for denying approval of PTL's preliminary plat.

Moreover, because the county's zoning and subdivision ordinances implement the comprehensive guide plan, a preliminary plat that conforms with the requirements of zoning and subdivision ordinances conforms, by definition, with the comprehensive guide plan. *Chanhassen Estates,* 342 N.W.2d at 340. PTL's preliminary plat conforms with the requirements of the zoning and subdivision ordinances. Accordingly, the decision to deny PTL's preliminary plat on the basis that it fails to implement the comprehensive guide plan is premised on a legally insufficient reason.

We are mindful of the demands of land-use management. It is certainly proper for the board of commissioners to consider aesthetics, historical uses of the land, and the public cost of providing services for a given land use. But these considerations

must be reflected with sufficient specificity in the land-use ordinances. This decision does not preclude future revision of the zoning and subdivision ordinances to address these considerations.

## DECISION

The board of commissioners exceeded its authority in denying PTL's application for preliminary-plat approval on the basis that the proposed development was incompatible with existing land uses, was not well planned, and failed to implement the goals and policies of the comprehensive guide plan. The board's withdrawal, at oral argument, of the additional bases for denial of preliminary-plat approval makes it unnecessary for us to consider PTL's challenge to the board's reliance on those bases. We reverse the board's denial of preliminary-plat approval and remand to the board of commissioners for proceedings not inconsistent with this opinion.

**Reversed and remanded.**