**TPW, INC., Petitioner, Respondent,**

v.

**CITY OF NEW HOPE, Appellant.**

**No. CX–85–1837.**

Court of Appeals of Minnesota.

June 3, 1986.

Review Denied Aug. 13, 1986.

Denis E. Grande, Minneapolis, for respondent.

Steven A. Sondrall, Robbinsdale, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

TPW, Inc. applied to the New Hope City Council for a conditional use permit, a parking variance and construction approval for a Taco John's restaurant. When the city council denied the application, TPW moved for a writ of mandamus. The trial court granted the writ, requiring the City of New Hope to issue a conditional use permit to TPW. The city appeals. We reverse, dismissing the writ of mandamus.

## FACTS

TPW, Inc. (respondent) is a Minnesota corporation that owns real property in the City of New Hope. TPW plans to use its property for a fast-food restaurant with drive-through window service, to be known as Taco John's. The planned seating capacity is 40 and planned on-site parking is for 29 vehicles.

TPW's property is zoned B-3 (Auto-Oriented Business District). Under the New Hope zoning code, the purpose of the B-3 zone is to "provide for and limit" the establishment of motor vehicle oriented commercial and service activities.

A convenience food establishment (fast-food restaurant) is not a "permitted use" under the New Hope code, but is rather a "conditional use" provided that certain lighting, curbing, landscaping and other conditions are met.

In March 1985 TPW submitted to the New Hope Planning Commission an application for a conditional use permit for the fast-food restaurant. The first hearing was on March 5, 1985. The planning commission made some recommendations concerning landscaping and parking.

On April 2, 1985, the planning commission re-examined TPW's proposal and determined that the demanded changes had been made. By a unanimous vote, the commission recommended that TPW's application be approved.

On April 8, 1985, the New Hope City Council considered TPW's application for the conditional use permit and the planning commission's recommendation for approval. The mayor and several city council members expressed concern about the possible traffic, noise and nuisance problems from the proposed restaurant.

Mr. Winterhaltor of TPW reiterated that his consultants did not anticipate a traffic problem in the area and that closing two of the curb cuts would help solve some existing problems. He also said that the majority of the restaurant's business would be at noon.

Nonetheless, the city council and the mayor were opposed to the project. Finally the council passed a motion referring the application to the staff for findings of fact for denial.

At the May 13, 1985 city council meeting, the city's consultants stated that the park-

ing required for Taco John's would be 31 spaces, two more than the 29 planned for by TPW. The consultant said that a parking variance would be required.

Also at the May 13 meeting, the city council passed an ordinance which was a four month, six block moratorium banning any development on 42nd Avenue North. The ban applied to the "issuance of building permits * * * text changes * * * variances, conditional use permits * * * for any new construction, new use, new development or subdivision of all properties abutting 42nd Avenue North and extending 500 feet North and South between Winnetka and Louisiana Avenues North."

On May 28, 1985, the New Hope City Council denied TPW's conditional use permit. The council also found that TPW's request for a parking variance failed to satisfy the code in that TPW's request was made for purely economic reasons.

TPW moved for a writ of mandamus. The trial court granted the writ, finding that the city council had made its final decision to deny TPW's application on April 8, without making contemporaneous findings of fact. The trial court also found that the moratorium was a subterfuge to prohibit "TPW's legitimate use of its property." The city appeals.

## ISSUES

1. Did the trial court err in granting the writ of mandamus requiring the city to issue a conditional use permit?

2. Did the trial court err in finding that the moratorium was merely a pretext to keep TPW from building the fast-food restaurant?

## ANALYSIS

■ 1. The trial court found that the city's denial of TPW's application was unreasonable because: (1) TPW's proposed use was permitted by the zoning code; (2) the proposed use would not be detrimental to the health, safety or welfare of the public; and (3) the city's denial was made without any "contemporaneous findings of

fact." The trial court also found that the moratorium was a "subterfuge" to prohibit TPW's "legitimate use of its property."

The standard of review for zoning decisions was clarified in *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865 (Minn.1979). The supreme court held that in reviewing the decisions of local governing bodies in zoning matters, the appellate court makes an independent examination of the record to reach its own conclusions as to the propriety of that decision, without according specific deference to the trial court's review. *Id.* at 868 (citing *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 822 (Minn.1977)); *see also Odell v. City of Eagan*, 348 N.W.2d 792, 796 (Minn. Ct.App.1984).

The question is whether the zoning authority's action was reasonable. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416–17 (Minn.1981). For special (conditional) use permits, reasonableness is measured by the standard set out in the particular local ordinance. *Id.* at 417.

Unlike a variance which permits particular property to be used in a manner forbidden by the ordinance, a special-use permit allows property, within the discretion of the governing body, to be used in a manner expressly authorized by the ordinance. *Zylka v. City of Crystal*, 283 Minn. 192, 195–96, 167 N.W.2d 45, 49 (1969) (citations omitted). The governing body has broad discretionary powers, but may not deny such permits arbitrarily. *Id.* at 196, 167 N.W.2d at 49. A denial is arbitrary if all of the ordinance standards for conditional use permits have been met. *Id.*

The appellate court must assess the legal sufficiency of the reasons given by the governing body and must determine whether there is a factual basis for them. *C.R. Investments, Inc. v. Village of Shoreview*, 304 N.W.2d 320, 325 (Minn.1981). Not all of the city council's reasons for denial need be legally sufficient and supported by the facts in the record. *Hubbard Broadcasting, Inc. v. City of Afton*, 323 N.W.2d 757, 765, n. 4 (Minn.1982) (citation omitted).

Here, the trial court's main objection was that the city council's final decision was made without contemporaneous findings of fact. It is true that the city council expressed concern about traffic, noise and parking at its April 8, 1985 meeting, and asked the staff to prepare findings for denial. However, the final decision was reserved until May 28, 1985. The city council's May 28 resolution contained findings and reasons for denial. Therefore, the question is whether those reasons were legally sufficient and supported by the evidence.

In its May 28 resolution, the New Hope City Council found that:

3. That petitioner's site is too small to adequately support the proposed use indicated in its site plan as follows:

a. The City's Zoning Code requires 31 parking spaces and petitioner can only provide 29 spaces.

b. That 8 of the proposed parking spaces are considered substandard and marginally in compliance with City standards, and unsatisfactory in the overall content of the plan.

c. The City's Zoning Code requires a 180′ stacking lane for motor vehicles using the drive-through and petitioner can only provide a 165′ stacking lane.

d. Motorists using six of the parking stalls would be required to drive onto the drive-through service lane creating potentially dangerous traffic congestion.

e. Customers wishing to utilize the petitioner's sit-down building facilities would be required to walk across the drive-through service lane to enter and exit petitioner's building creating potentially dangerous traffic congestion.

f. Additional vehicular traffic generated by the drive-through will cause a conflict with the through traffic on 42nd Avenue North.

The city council also found that a) the drive-through service window would create a noise problem because of the late hours of operation and proximity to a residential neighborhood; and b) respondent's request for a parking variance was made solely for economic reasons and therefore did not satisfy the New Hope code.

The New Hope code outlines the factors to be considered in deciding whether to grant a conditional use permit. The governing body must consider whether the proposed use: a) is consistent with the official comprehensive municipal plan; b) is compatible with adjacent land uses; c) conforms with all applicable performance standards in the code; d) will tend to depreciate the area in which it is proposed; and e) meets the criteria specified for the various zoning districts.

In B–3 business districts, the council must additionally consider a) whether the proposed use will cause traffic hazards or congestion; b) whether nearby residential land will be adversely affected; and c) whether existing nearby businesses will be adversely affected.

The city council properly found that respondent's proposal failed to meet parking requirements in the code. This finding was based on report of the city's consultant which calculated that 31 parking spaces were required under the code for a fast-food restaurant the size of respondent's. The consultant added that of respondent's planned 29 spaces, eight could be rejected as inadequate and substandard. Therefore, denial based on inadequate parking spaces was both legally sufficient and factually supported.

■ At its May 18, 1985 meeting, the city council decided that a parking variance was required for respondent's proposed fast-food restaurant, since he could not provide the necessary 31 spaces. The public hearing was continued until May 28, to allow respondent to respond to this decision. The New Hope code provides that a variance permits relief from the strict application of the zoning code, "to prevent undue hardships or mitigate undue *non-economic* hardship" in the reasonable use of land (emphasis added). On May 28, the city council found that respondent's request was based upon purely economic rea-

sons and was not due to unique characteristics of the property. Therefore, the council denied the variance. This decision was consistent with the code. We also note that the applicant for a variance has a heavier burden than the applicant for a conditional use permit. *Inland Construction Co. v. City of Bloomington*, 292 Minn. 374, 379, 195 N.W.2d 558, 562 (1972).

The city council also found that the 165-foot stacking lane planned by respondent was inadequate under the zoning code. The New Hope code requires a 180-foot stacking lane for a drive-through service window in a B–4 (Community Business District), which is considered a more intensive use area than the B–3 district. However, the code contains no specifications for stacking lanes in B–3 districts. The city council used the 180-foot standard articulated for B–4 districts in deciding that respondent's planned stacking lane was inadequate. Since the B–4 standard applies to fast-food restaurants, a use identical to that contemplated by respondent, it was reasonable for the city council to apply that provision.

Although the record does not support the city council's concerns regarding noise and traffic, its findings of inadequate parking and inadequate stacking lane are factually supported and legally sufficient under the code.

Because the New Hope City Council provided legally sufficient and factually supported reasons for its denial of the conditional use permit, the trial court erred in granting the writ of mandamus.

2. TPW also argues, and the trial court found, that the moratorium on new development was merely a subterfuge to prevent TPW from constructing its restaurant.

Minn.Stat. § 462.355, subd. 4 (1984), outlines the requirements for establishing a moratorium or "interim ordinance:"

If a municipality is conducting studies * * * for the purpose of considering adoption or amendment of a comprehensive plan * * * the governing body of the municipality may adopt an interim ordinance applicable to all or part of its jurisdiction for the purpose of protecting the planning process and the health, safety and welfare of its citizens. The interim ordinance may regulate, restrict or prohibit any use, development, or subdivision within the jurisdiction or a portion thereof for a period not to exceed one year * * * and may be extended for such additional periods * * * not exceeding a total additional period of 18 months.

*Id.*

A moratorium ordinance is a valuable tool to keep open a municipality's planning options. *See Almquist v. Town of Marshan*, 308 Minn. 52, 245 N.W.2d 819, 824 (1976). The supreme court stated:

During the period when Almquist was seeking approval of his plan, three other developers were also submitting proposals. Confronted with these alternatives, it was not wholly unreasonable for the board ultimately to resort to a moratorium which would permit them to utilize the expertise of professional planners for a comprehensive zoning system * * *. We find the reasons given for the moratorium demonstrate a good-faith effort to accomplish these goals. The moratorium resolution itself recites a need for orderly development and for the assistance of the county planning office in preparing a comprehensive plan * * *.

*Id.*, 245 N.W.2d at 825.

Here, the city council's resolution provided that the present comprehensive plan may be "lacking in safeguards to protect the planning process" relating to construction, use and development on 42nd Avenue North. The resolution also indicated that the city needed time to conduct a study, and to do so it prohibited any further new use or construction until the study was accomplished. Therefore, the trial court erred in concluding that the moratorium was solely a subterfuge to block the fast-food restaurant.

## DECISION

The trial court is reversed and the writ of mandamus dismissed.