**AMOCO OIL COMPANY, Appellant,**

v.

**CITY OF MINNEAPOLIS, Respondent.**

No. C3–86–992.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Philip W. Getts, Pepin, Dayton, Herman, Graham & Getts, Minneapolis, for appellant.

Robert J. Alfton, City Atty., William C. Dunning, Asst. City Atty., Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

The City of Minneapolis denied Amoco Oil Company's application for a conditional use permit to operate a twenty-four-hour combination gas station and grocery store because the store conflicted with the city's comprehensive zoning plan and because it would detrimentally impact upon neighboring residents. Amoco brought an action against the city for declaratory and injunctive relief. Both parties moved for summary judgment and the trial court granted the city's motion, refusing to set aside the city council's determination. We reverse.

## FACTS

Appellant Amoco Oil Company wanted to convert a gas station at 54th Street and Lyndale Avenue in Minneapolis from a traditional service station to a twenty-four-hour gas and convenience store. The facility was located in an area zoned to permit such an operation, but the owner was required to obtain a conditional use permit to operate the facility between 11:00 p.m. and 6:30 a.m.

On October 22, 1984 Amoco filed an application for a conditional use permit. The staff at the Minneapolis Planning Department recommended denying the application for twenty-four-hour service for two reasons. First, the city's comprehensive zoning plan had designated the area as a "neighborhood retail" area. Consequently, the twenty-four-hour operation would be contrary to the intent of the comprehensive plan. Second, because of the noise, lights, traffic and activity that would exist all night, the counsel felt the twenty-four-hour operation would be injurious to the single family residences that are located immediately to the west of the facility.

Amoco met with the people who lived adjacent to the facility and made changes in its plans to try to lessen the adverse impact on the neighbors. Specifically, Amoco agreed to build a wooden fence between its property and its neighbors, install special lights, relocate the curb cut on 54th Street to avoid conflicting traffic flows, and limit gasoline deliveries and operation of the car wash to between 7:00 a.m. and 10:00 p.m. These changes apparently satisfied the neighbors who then signed a letter addressed to their city council member Charlee Hoyt stating that they could live with the twenty-four-hour operation if Amoco would strictly adhere to their conditions.

On April 10, 1985 the planning commission conducted a hearing on Amoco's conditional use permit. The planning commission voted to approve Amoco's application, specifically finding that the planned modifications rectified the two inadequacies upon which the planning staff had based its recommendation for denial. The application was then presented to the Zoning and Planning Committee of the Minneapolis City Council.

Based on the opposition of Ms. Hoyt the Zoning and Planning Committee disapproved the application. The City Council declined to act on the matter and referred it back to the Zoning and Planning Commit-

tee. At this time Ms. Hoyt explained that she had attended a neighborhood meeting in which the residents decided that they did not want the twenty-four-hour operation. After other meetings and hearings, the City Council refused to grant Amoco's application on June 14, 1985. Amoco then brought an action in district court to compel the city to issue the permit. From the district court's summary judgment for the city, Amoco appeals.

## ISSUE

Did the city of Minneapolis act arbitrarily and unreasonably in denying Amoco's conditional use permit?

## ANALYSIS

■ Conditional or special use permits are zoning devices designed to meet problems that arise when certain uses, although generally compatible with the basic use classification of a particular zone, should not be permitted to be located as a matter of right in a particular area of that zone because of hazards inherent in the use itself or because of special problems which its proposed location may present. *Zylka v. City of Crystal*, 283 Minn. 192, 195, 167 N.W.2d 45, 48 (1969). Through utilization of conditional use permits certain uses that may be considered desirable to the community, but which would not be authorized generally in a particular zone because of considerations involving public health, safety, or general welfare, may be permitted upon a proposed site depending upon the facts and circumstances of the particular case. *Id.* at 195, 167 N.W.2d at 48–49.

■ A municipality has broad discretionary power to deny an application for a conditional use permit, but it cannot do so arbitrarily. *Id.* at 196, 167 N.W.2d at 49. When the municipality states reasons for denying the permit a reviewing court may reverse the decision if the reasons are legally insufficient or if the decision is without factual basis. *Corwine v. Crow Wing County*, 309 Minn. 345, 352, 244 N.W.2d 482, 486 (1976). The party seeking review has the burden of persuading the reviewing

court that those reasons are legally insufficient. *Id.* The reviewing court must independently review the municipality's record and decision without affording any special deference to the trial court's review. *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865, 868 (Minn.1979) (citing *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977)).

The city council denied the permit for two reasons. First, the facility would conflict with the city's comprehensive zoning plan. Second, the proposed twenty-four-hour facility would adversely affect the residential neighbors bordering on the facility. The council also relied on a petition from neighbors who did not want the facility to operate twenty-four-hours a day.

■ Appellant initially contends that the city applied an incorrect legal standard by relying on the comprehensive plan to justify denial of its permit. Appellant argues that the property is specifically zoned for "community service" and retail uses, not just "neighborhood retail." Although the "neighborhood" districts are intended for the convenience of persons residing in nearby residential areas, the "community" districts are intended to accommodate the needs of a wider consumer population. *See* Minneapolis Zoning Code § 540.890, § 540.-1260. Appellant argues that its facility is a proper facility within a community service district and that the city council improperly relied on the comprehensive plan's classification. We agree.

In *Hubbard Broadcasting, Inc. v. City of Afton*, 323 N.W.2d 757, (Minn.1982), the Minnesota Supreme Court did find that incompatibility between the proposed use and a municipality's comprehensive zoning plan is a legally sufficient reason for denial of a special use permit. *Id.* at 763. However, the zoning ordinance in *Hubbard* specifically provided that the comprehensive plan should be considered in determining whether or not to grant a special use permit. *Id.* *Hubbard* is distinguishable on this basis because such is not the case here. Specifically, Minneapolis Ordinance § 534.340 lists

the factors which must be considered in determining whether to grant a conditional use permit. It does not list the comprehensive zoning plan of the city as one of the relevant factors.

Additionally, unlike the zoning in *Hubbard*, Minneapolis' specific zoning plan permits a limited version of the proposed use. Under the Minneapolis zoning code, a combination service station and retail facility with operating hours between 6:30 a.m. and 11:00 p.m. is a permissable use in this district. Thus, the Minneapolis comprehensive plan is in conflict with the specific zoning plan for the relevant area. Had the city wished to zone the relevant area as a "neighborhood retail" district, prohibiting the proposed use, rather than a "community service" district, it could have done so. We believe that in such a case incompatibility with the comprehensive zoning plan is not a legally sufficient basis for denying the conditional use permit.

Nor do we believe that the evidence supports a finding that the twenty-four-hour operation will adversely affect the adjacent residential neighborhood. After the planning staff originally recommended denying the permit because of the operation's adverse affect on the neighborhood, appellant has made numerous changes in the station's construction. To restrict light and glare, appellant installed light standards which reduced light spillage at the property boundary to one-tenth of a foot candle. Appellant further agreed to construct an eight foot wooden fence between its building and the alley between it and the houses, and to construct the site so as to prohibit water drainage into the alley. To reduce noise, appellant agreed to limit car washes and gasoline deliveries to between 7:00 a.m. and 10:00 p.m. Finally, appellant agreed to reduce the entrance along 54th Street to one curb cut to avoid conflicting traffic flows. These changes apparently satisfied the planning staff which recommended granting the permit after appellant agreed to these conditions.

While appellant presented all this evidence to show that the operation would not adversely affect the neighbors, the city presented no evidence that the operation would increase traffic, light, or noise in the area. Instead, it relied extensively on the residential character of the neighborhood in which appellant wishes to locate its facility. The city notes that the facility is adjacent to a large single family neighborhood, and argues that the facility will obviously adversely affect the neighbors.

The city fails to note that a twenty-four-hour convenience store is located across the street from appellant's property and that numerous other commercial buildings are located on the block. Furthermore, the area is specifically zoned to permit twenty-four-hour gas stations as long as no groceries are sold on the premises. No evidence in the record shows that appellant's planned use is more intrusive than uses which are already permitted without a conditional use permit. Consequently, we believe the evidence does not support the council's finding that the proposed operation would adversely affect the adjacent neighborhood.

■ It is well established that where a zoning ordinance specifies standards to apply in determining whether or not to grant a conditional use permit and the applicant fully complies with the specified standards, a denial of the permit is arbitrary as a matter of law. *Hay v. Township of Grow*, 296 Minn. 1, 5, 206 N.W.2d 19, 22 (1973). The council erroneously relied on the comprehensive plan to justify denial of the permit and the evidence does not support the council's finding that the proposed operation would adversely affect the adjacent neighborhood. We therefore believe the city council acted arbitrarily in denying the permit.

■ It appears to this court that the real reason the city council denied granting the permit was because of objections from the neighborhood and the neighborhood's council member. The simple fact that community members oppose a landowner using his land for a particular purpose is not a legally sufficient reason for denying a special use permit. *Barton Contracting Co. v.*

*City of Afton,* 268 N.W.2d 712, 718 (Minn. 1978).

## DECISION

Because the city's comprehensive zoning plan is not a legally sufficient reason for denying the conditional use permit and because the evidence does not support a finding of detrimental impact on the neighborhood, we reverse and remand for the trial court to enter judgment ordering the city to issue the permit.

Reversed and remanded.