Esther CHASE, an individual, petitioner, Appellant, (C6–86–1523) Respondent, (C8–86–1524)

North Central Food Systems, petitioner, Respondent, (C6–86–1523) Appellant, (C8–86–1524)

v.

The CITY OF MINNEAPOLIS, et al., Respondents.

Nos. C6–86–1523, C8–86–1524.

Court of Appeals of Minnesota.

March 3, 1987.

Harold Kalina, J. Randall Benham, Oppenheimer Wolff & Donnelly, Minneapolis, for Esther Chase.

John M. Koneck, Eric S. Anderson, Mallory K. Mullins, Fredrikson & Byron, Minneapolis, for North Central Food Systems.

Robert J. Alfton, Minneapolis City Atty., Michael Norton, Asst. City Atty., Minneapolis, for City of Minneapolis.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment granting respondents' summary judgment motion and denying appellants' summary judgment motion requesting a writ of mandamus to compel issuance of a permitted use building permit. Appellants claim the trial court erred in finding respondents did not arbitrarily deny the permit because (1) respondents' stated reason for denial lacks factual basis, (2) the trial court improperly relied on other legally insufficient reasons supporting denial, and (3) appellants have met all requirements necessary for the permit's issuance. We reverse and remand with instructions to the trial court to issue a writ of mandamus directing respondents to issue the requested permit.

## FACTS

In February 1985, appellant North Central Food Systems, Inc. (North Central) agreed to lease from appellant Esther Chase property located at 211 Tenth Avenue S.E., Minneapolis. The lease required North Central to build a Hardee's restaurant on the property and/or adjoining land. The site is bounded by Interstate Highway 35W on the west, sorority houses across University Avenue to the north, Florence Court Apartments to the east, and railroad tracks to the south. At the time of the lease, the property was zoned M1-2, which permits convenience food restaurants if certain specified criteria are met.

On February 10, 1986, the Referrals Committee of respondent Minneapolis City Planning Commission (Commission) conducted a public hearing on appellant North Central's building permit application. Commission staff recommended approval of the site plan, advising the Referrals Committee the property's zoning permitted a convenience food restaurant, and the site plan complied with all zoning code requirements regarding curb cuts, safety signage, lighting, landscaping, parking, screening of view and architectural appearance. The

Referrals Committee, however, voted 4–1 to recommend denial of the building permit because of noncompliance with subparagraph (g) of section 540.1400(48) of the Minneapolis Zoning Code, which provides:

> The architectural appearance and functional plan of the building shall not be so dissimilar to existing buildings as to cause impairment in property values within reasonable distance of applicant's zoning lot.

At the hearing, several residents of the surrounding neighborhood expressed their desire that the property be used for residential, rather than commercial, purposes. Some opponents stated the Hardee's proposal was inconsistent with the area's long-term pro-residential comprehensive plan.

On February 12, 1986, respondent Commission approved the Referrals Committee recommendation to deny the permit on the basis of noncompliance with zoning code section 540.1400(48)(g). According to the minutes of the meeting, discussion focused on the proposed use being inappropriately commercial and inconsistent with the area's comprehensive plan.

On March 26, 1986, appellants filed a petition for writ of mandamus in the district court to compel respondent City of Minneapolis to issue a building permit. On April 11, in response to concerns raised by appellants' permit application, the Minneapolis City Council voted to conduct a 40–acre zoning study of the Marcy-Holmes neighborhood surrounding the site. A 120–day moratorium was imposed on the issuance of commercial building permits for the area.

On April 23, 1986, respondents City of Minneapolis and the Commission filed their answer and return to the petition for writ of mandamus. The same day, the court ordered respondent Commission to conduct another public hearing specifically addressing the issue of noncompliance with subparagraph (g).

On May 5, 1986, the court-ordered rehearing was held before the Referrals Committee. Appellants presented evidence regarding their intent to comply with subparagraph (g). Appellants' experts testified the proposed Hardee's building was similar to the neighborhood's diverse architectural styles and therefore would not diminish property values in the area. In addition, appellants presented a letter from Larry Hopfenspirger, one of the owners of the Florence Court Apartments, who clarified his previous position stating, "[w]e do not believe that the architecture or planning of a Hardee's restaurant would have a significant effect on the market value of the Florence Court Apartments." No expert testimony or factual data was submitted suggesting the architectural appearance or functional plan of the proposed Hardee's restaurant would actually adversely affect property values within a reasonable distance of the property. The Referrals Committee nonetheless voted again to deny the permit based on noncompliance with subparagraph (g).

On May 13, 1986, the parties appeared again before the court on the petition for mandamus. The parties agreed to submit memoranda in support of cross-motions for summary judgment. By order filed August 7, 1986, the court denied appellants' summary judgment motion and granted respondents' summary judgment motion. In its memorandum, the court stated in light of *TPW, Inc. v. City of New Hope*, 388 N.W.2d 390 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Aug. 13, 1986), it was "compelled to find that the Commission did not act arbitrarily." The court explained:

> According to the Appellate Court in *TPW*, not all of the reasons to deny need be legally sufficient and supported by facts in the contemporaneous record. It is sufficient for the record to indicate at least some sufficient reason for the public body's action. At the February 10, 1986, and the May 5, 1986, hearings persons testified in opposition to [appellants]. These people testified as to the negative impact which would result if [appellants'] request was granted. They noted as their concerns such items as: increased traffic, movement toward keeping the area residential, and the adverse

impact a convenience food restaurant would have on the restoration and value of the Florence Court Apartments. These facts go to the issue of whether or not the [appellants'] proposed use would violate the zoning code.

Appeal is from the summary judgment entered August 18, 1986.

## ISSUES

1. Is the City Planning Commission's denial of the permitted use building permit final for purposes of judicial review?

2. Did the trial court err in finding respondents did not arbitrarily deny the building permit?

3. Is the mandamus action proper?

## ANALYSIS

■ 1. Minn.Stat. § 462.361, subd. 2 (1986) requires a party aggrieved by a decision of a governing body to exhaust all administrative remedies before seeking judicial review. Respondents claim Minneapolis Zoning Code section 534.330 requires the Commission's denial of appellants' permit to proceed to the City Council for final determination before judicial review is available. The zoning code section provides:

> For each application for a conditional use the planning commission shall report to the appropriate committee its findings and recommendations * * *. The city council may grant or deny any application for a conditional use.

Minneapolis, Minn., Zoning Code § 534.330 (1981). Although section 534.330 applies to a conditional use and not the permitted use appellants request in this case, respondents claim the section nonetheless applies here because conditions placed on the permit's approval under the ordinance recharacterizes the requested use as conditional.[1]

Appellants claim, however, the Commission's denial of the permitted use permit for a convenience food restaurant is final

for purposes of judicial review. We agree. The Minneapolis Zoning Code outlines conditions required for approval of a convenience food restaurant building permit and provides in relevant part:

> Findings and recommendations by the city planning commission shall be made within forty-five (45) days of determination by the zoning administrator as to whether the proposed facility is a restaurant or a convenience food restaurant. *If there is a finding of noncompliance as to specific conditions within said forty-five (45) days, no building permit shall issue. Otherwise the building permit shall issue* according to the plans as submitted to and filed with the zoning administrator.

Minneapolis, Minn., Zoning Code § 540.-1400(48)(i) (1986) (emphasis added). The ordinance makes no provision for final determination by the City Council, thereby authorizing the Commission to grant or deny the permit. *See* Minn.Stat. § 462.354, subd. 1 (1986) (municipality authorized to create planning agency which shall be advisory except for duties and powers imposed by ordinance); *id.* § 462.352, subd. 3 (planning agency means planning commission).

We disagree with respondents that the permitted use in this case is converted to a conditional use because of conditions imposed by the code for approval of the permit. Permitted and conditional uses are separately defined under the zoning code and permit applications for each are reviewed differently.

The zoning code defines a permitted use as:

> A use which may be lawfully established in a particular district or districts, provided it conforms with all requirements, regulations and performance standards (if any) of such district.

---

1. Respondents concede they did not require appellants to proceed to the city council for final determination of this matter. Respondent further concedes remand to the City Council would

serve no useful purpose and urges this court to clarify the proper procedure and resolve the issues raised.

Minneapolis, Minn., Zoning Code § 522.40 (1981). By contrast, a conditional use is defined as:

> A use—either public or private—which, because of its unique characteristics, cannot be properly classified as a permitted use in a particular district. After due consideration in each case, of the impact of such use upon neighboring land, and of the public need for the particular use at the particular location, such "conditional use" may or may not be granted.

*Id.*

In *Chanhassen Estates Residents Association v. City of Chanhassen*, 342 N.W.2d 335 (Minn.1984), the Minnesota Supreme Court distinguished a city's review of permit applications requesting permitted and conditional uses.

> [R]eview of an application for a permitted use need go only to the applicant's compliance with the specific "requirements, regulations and performance standards" prescribed by the ordinance. Subject to such compliance, approval of a permitted use follows as a matter of right.
>
> A conditional or special use permit may be denied for reasons relating to public health, safety, and general welfare. Authorization of a given use by special or conditional use permit reserves to the city the discretion to consider the proposed use in the light of the general welfare and the city's planning goals. Nevertheless, denial of a conditional use must be based on something more concrete than neighborhood opposition and expressions of concern for public safety and welfare.

*Id.* at 340 (citations omitted)

Based on distinctions established in the zoning code and interpretive case authority, we conclude the Commission's denial of appellants' permitted use building permit is final, and judicial review is proper.

■ 2. The standard of review in all zoning matters is whether a municipality's

action was "reasonable and not arbitrary or capricious in light of applicable zoning ordinances." *Horbal v. City of Ham Lake*, 393 N.W.2d 5, 7 (Minn.Ct.App.1986). When a municipality states reasons for denying a building permit, a reviewing court "may reverse the decision if the reasons are legally insufficient or if the decision is without factual basis." *Amoco Oil Company v. City of Minneapolis*, 395 N.W.2d 115, 117 (Minn.Ct.App.1986). An appellate court must "independently review the municipality's record and decision without affording any special deference to the trial court's review." *Id.*

■ Respondents stated the reason for denying appellants' permit was noncompliance with zoning code section 540.-1400(48)(g), since the proposed architectural appearance and functional plan are so dissimilar to existing buildings as to impair property values in the surrounding area.

We conclude the stated reason is without factual basis. The record shows the Commission staff recommended approval of the permit because the proposal complied with all zoning requirements. Appellants presented evidence that the architectural appearance of the restaurant will be similar to the mixed building styles surrounding the property and will not impair property values. Respondents presented no rebutting facts regarding dissimilar architectural design or impairment of property values.

Respondents argue, and the trial court agreed, review of the reasons for the permit's denial is not limited to the stated noncompliance with zoning code section 540.1400(48)(g). The trial court listed other facts which "go to the issue of whether or not [appellants'] proposed *use* would violate the zoning code." (Emphasis added). The commercial use appellants proposed, however, is *permitted* by the property's M1-2 zoning classification. "The council * * * *is bound* by the comprehensive zoning classification * * *." *Olsen v. City of Minneapolis*, 263 Minn. 1, 8, 115 N.W.2d 734, 739 (1962) (emphasis added); *see also*

*Horbal,* 393 N.W.2d at 7 (mere community opposition not legally sufficient for denial).

■ Respondents further argue the comprehensive plan is a proper alternative ground to sustain the permit's denial. Minn.Stat. § 473.865, subd. 2 (1986) provides:

A local governmental unit shall not adopt any official control or fiscal device which is in conflict with its comprehensive plan or which permits activity in conflict with metropolitan system plans.

*Id.* More specifically, however, Minn.Stat. § 473.858, subd. 1 (1986) provides "[i]f the comprehensive municipal plan is in conflict with the zoning ordinance, the *zoning ordinance supersedes the plan." Id.* (emphasis added); *see, e.g., Amoco Oil Company,* 395 N.W.2d at 118 (incompatibility with comprehensive plan insufficient basis for conditional use permit's denial). *Compare Barton Contracting Co. v. City of Afton,* 268 N.W.2d 712, 719 (Minn.1978) (comprehensive plan sufficient basis for conditional use permit's denial when proposed gravel mining use would not allow later planned residential end use).

The trial court looked for other reasons for denial of the permit, relying on *TPW,* 388 N.W.2d at 390. The *TPW* trial court found the city's denial of a conditional use permit arbitrary. This court reversed, stating "[n]ot all of the city council's reasons for denial need be legally sufficient and supported by the facts in the record." *Id.* at 392.

■ The trial court's reliance on *TPW* in this case, however, is misplaced. *TPW* involved review of a *conditional use* application, and the city had discretion to consider the proposed use "in the light of the general welfare and the city's planning goals." *Chanhassen Estates Residents Association,* 342 N.W.2d at 340. A city is not afforded similar discretion in reviewing a *permitted use* application because approval of a project complying with the zoning code "follows as a matter of right." *Id.* Fur-

ther, unlike this case, the city council in *TPW* made specific findings, supported by objective data showing the project failed to meet zoning code standards. *TPW,* 388 N.W.2d at 393.

■ Since this case involves denial of a permitted use application, the trial court erred in failing to limit its review to the stated reason for denial. Denial for noncompliance with zoning code section 540.-1400(48)(g) is without factual support. The record shows appellants' application complied with all zoning code requirements. Therefore, the trial court erred in finding respondents did not act arbitrarily in denying the building permit and granting respondents' motion for summary judgment. *See, e.g., TPW,* 388 N.W.2d at 392 (denial arbitrary if all ordinance standards met).

3. In *Enright v. City of Bloomington,* 295 Minn. 186, 187, 203 N.W.2d 396, 397 (1973) (per curiam), the Minnesota Supreme Court stated the conditions appropriate for a mandamus action:

[I]f the party seeking the permit meets all the standards prescribed in the ordinance, the council has no discretion to deny the permit. Its refusal to grant the permit in such circumstances is arbitrary as a matter of law, and *mandamus will lie to compel the council to grant the permit.*

*Id.* (emphasis added).

In *City of Barnum v. County of Carlton,* 394 N.W.2d 246 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Dec. 17, 1986), this court found a building permit denial arbitrary and remanded with instructions to the trial court to issue a writ of mandamus directing the permit's issuance. We decided not to remand for further findings because an adequate record had been developed and we feared "that any findings made by the county board at this late date would merely rationalize their decision." *Id.* at 250 (quoting *City of Barnum v. County of Carlton,* 386 N.W.2d 770, 776 (Minn.Ct.App.1986)).

Respondents argue mandamus is improper because at the time the trial court first considered the matter on April 23, a valid 120–day moratorium prohibiting the issuance of all permits had been in effect since April 11, 1986.[2]

Appellants claim, and we agree, the moratorium does not affect the mandamus action in this case because the moratorium was enacted after expiration of the 45–day time limit in which respondent Commission was required to act on the permit application. Minneapolis, Minn., Zoning Code § 540.1400(48)(i). The Commission's findings must be made within 45 days of the "determination by the zoning administrator as to whether the proposed facility is a restaurant or a convenience food restaurant." *Id.* Although the date of the zoning administrator's determination does not appear in the record, the moratorium was adopted on April 11, more than 45 days after the February 10, 1986 hearing, at which the Commission staff first recommended the permit's approval.

Since respondent Commission arbitrarily denied the permit, and appellants otherwise complied with all zoning requirements, the building permit should have issued within the 45–day time period. Accordingly, we remand with instructions to the trial court to issue a writ of mandamus directing respondents to issue the requested building permit.

## DECISION

Because the Minneapolis Zoning Code authorizes the City Planning Commission to make a final determination whether to issue a building permit for convenience food restaurants, judicial review is proper. The trial court erred in finding the Commission's denial was not arbitrary. Since appellants have complied with all zoning requirements, we reverse and remand to the

trial court for issuance of a writ compelling the permit's issuance.

Reversed and remanded.

2. Respondents assert the rezoning study and moratorium resulted in residential rezoning of the area in question. Thus, respondents claim appellants' contemplated use is no longer permitted and the council cannot issue the requested building permit under its existing zoning ordinance. Evidence regarding the claimed rezoning is not in the record, however, and not properly before us.