**CARL BOLANDER & SONS COMPANY, Respondent (C4–91–2538, C7–92–48), Appellant (C9–92–116),**

v.

**CITY OF MINNEAPOLIS, et al., Appellants (C4–91–2538), Respondents (C7–92–48, C9–92–116),**

**State of Minnesota, by its Attorney General, Hubert H. Humphrey, III, applicant for intervention, Appellant (C7–92–48).**

Nos. C4–91–2538, C7–92–48, C9–92–116.

Court of Appeals of Minnesota.

July 14, 1992.

Review Granted Aug. 27, 1992.

Timothy A. Sullivan, Frank J. Walz, Caryn S. Glover, Best & Flanagan, Minneapolis, for respondent (C4–91–2538, C7–92–48), appellant (C9–92–116).

Robert J. Alfton, City Atty., Corey M. Conover, Asst. City Atty., Minneapolis, for appellants (C4–91–2538), respondents (C7–92–48, C9–92–116).

Hubert H. Humphrey, III, Atty. Gen., Alan R. Mitchell, Sp. Asst. Atty. Gen., St. Paul, for appellant (C7–92–48).

Jack Cann, Minneapolis, for amicus curiae Prospect Park and East River Road Improvement Ass'n.

Considered and decided by FORSBERG, P.J., and HUSPENI and PETERSON, JJ.

## OPINION

HUSPENI, Judge.

In consolidated cases, appellant City of Minneapolis challenges the trial court's order directing the city to issue a recycling yard license to respondent. Appellant State of Minnesota challenges the trial court's denial of motion to intervene as of right. Respondent claims that the trial court erred in denying its motion for a temporary restraining order and dismissing its claim for a temporary injunction. We affirm the trial court's denial of a temporary restraining order and dismissal of the claim for a temporary injunction, reverse the directive to the city to issue a recycling yard permit and dismiss the state's motion to intervene as moot.

## FACTS

Carl Bolander & Sons Company ("Bolander") operates an asphalt and cement recycling facility in St. Paul, Minnesota. It seeks to relocate its facility to a newly purchased seventeen acre parcel at 620 Malcolm Avenue S.E. in Minneapolis ("city"). In September of 1991, Bolander submitted an application for a recycling yard license to the city.

The parcel has at all relevant times been zoned M3 for industrial use. The proposed recycling operation would involve up to two hundred trucks a day bringing asphalt and concrete to the property. The asphalt and concrete would then be pulverized into small granules for use in new construction. The machinery involved in the recycling operation is to be located in the open air.

Upon hearing of Bolander's purchase of the Minneapolis property, the Prospect Park and East River Road Improvement Association, Inc. (PPERRIA) began circulating petitions throughout the neighboring residential community calling for the completion of an Environmental Assessment Worksheet ("EAW") prior to the issuance of a recycling yard license. The petition was forwarded to the Minnesota Environmental Quality Board ("EQB"). The EQB informed the city planning department of the PPERRIA petition and told the city that it could not issue the recycling yard license until it had determined whether an EAW was needed. The EQB informed the city that it was allowed thirty working days to reach its decision. This thirty day limit was to expire on November 1, 1991.

The city's Health, Environment & Human Development Committee ("committee") held a public hearing on the matter at which both Bolander and the PPERRIA were represented. The committee recommended that Bolander be required to complete an EAW prior to the issuance of a recycling yard license. On November 8, 1991, the city council voted to adopt the findings and recommendations of the committee.

On November 26, 1991, Bolander brought suit in Hennepin County District Court to compel the city to issue the recycling yard license. The trial court scheduled a pretrial conference for November 29, at which conference the court ordered the parties to argue the merits of the case and to submit briefs by December 3. On

December 5, the trial court issued an order for judgment instructing the city to issue the recycling yard license. Judgment was entered on December 24, 1991. Also on December 24, the State of Minnesota moved to intervene as of right under Minnesota Rules of Civil Procedure 24.01. The trial court denied the state's motion.

On December 31, 1991, Bolander brought a second suit in Hennepin County District Court seeking a temporary injunction to stop the city from operating its own asphalt and concrete recycling facility. In January, 1992, Bolander moved for a temporary restraining order. The trial court other than that involved in the PPERRIA action denied Bolander's motion, and dismissed the action.

## ISSUES

1. Did the trial court err in concluding that Bolander was not required to complete an environmental assessment worksheet?

A. Is Bolander exempt because of the size of its proposed facility?

B. Is Bolander exempt because there is no governmental decision to be made?

C. Is Bolander exempt because the city failed to act in a timely manner?

D. Is Bolander exempt because the proposed facility does not have the potential for significant environmental effects?

2. Did the trial court err in denying the state's motion to intervene?

3. Did the trial court err in denying Bolander's motion for a temporary restraining order and dismissing its claim for a temporary injunction?

## ANALYSIS

1. The city claims that the trial court erred when it found that Bolander was not required to complete an EAW and ordered the city to issue a recycling yard license. We agree.

Minnesota Statutes section 116D.04, subdivision 2a provides:

An environmental assessment worksheet shall * * * be prepared for a proposed action whenever material evidence accompanying a petition by not less than 25 individuals, submitted before the proposed project has received final approval by the appropriate governmental units, demonstrates that, because of the nature or location of a proposed action, there may be potential for significant environmental effects.

Minn.Stat. § 116D.04, subd. 2a(c) (1990).

It is undisputed that the PPERRIA petition was signed by more than twenty-five individuals and was submitted before the Bolander project had received the recycling yard license. Therefore, Bolander is required by section 116D.04 to complete an EAW unless the proposed project does not have a potential for significant environmental effects or unless the project is otherwise exempted by the section and the rules promulgated thereunder. The trial court found that the Bolander project fell within several of the exceptions to this general requirement. We shall address each finding in turn.

A. Is Bolander exempt because of the size of its proposed facility?

Section 116D.04, subdivision 2a(a) directs:

The [Environmental Quality] board shall by rule establish categories of actions for which * * * environmental assessment worksheets shall be prepared as well as categories of actions for which no environmental review is required under this section.

Pursuant to this mandate, the EQB promulgated a rule which provides:

The following projects are exempt [from environmental review]:

A. Construction of a new or expansion of an existing industrial, commercial, or institutional facility of less than the following thresholds, expressed as gross floor space:

*   *   *   *   *   *

(3) first class city, 100,000 square feet * * * is exempt.

B. The construction of an industrial, commercial, or institutional facility with

less than 4,000 square feet of gross floor space, and with associated parking facilities designed for 20 vehicles or less, is exempt.

Minn.R. 4410.4600, subp. 10 (1991).

Bolander's proposed facility is to be located outside, and, therefore, will not have any "gross floor space." The machinery to be used in the facility will have a "footprint" of less than 4,000 square feet. Therefore, Bolander claims that its project is exempt from EAW requirements under rule 4410.4600, subpart 10. We do not agree.

The language of subpart 10 does not refer to "footprints," and there is no language in the rule to suggest that the "footprint" of machinery is an appropriate substitute for "gross floor space." Therefore, the language of the rule is ambiguous as it relates to its application to facilities which do not have "gross floor space." *See Tuma v. Commissioner of Economic Sec.,* 386 N.W.2d 702, 706 (Minn.1986) ("A statute is ambiguous when it can be given more than one reasonable interpretation").

■ Where a rule is ambiguous, this court must determine the probable legislative intent and give a construction that is consistent with that intent. *Id.;* Minn.Stat. § 645.16 (1990). Minnesota Statutes section 116D.02, subdivision 1 states that:

it is the continuing policy of the state government * * * to use all practicable means and measures * * * to create and maintain conditions under which human beings and nature can exist in productive harmony.

Minn.Stat. § 116D.02, subd. 1 (1990). Subdivision 2 of that same section provides:

In order to carry out th[is] policy, * * * it is the continuing responsibility of the state government to use all practicable means * * * to the end that the state may:

\* \* \* \* \* \*

(p) Reduce the deleterious impact on air and water quality from all sources, including the deleterious environmental impact due to operation of vehicles with internal combustion engines in urbanized areas;

\* \* \* \* \* \*

(q) Minimize noise, particularly in urban areas.

Minn.Stat. § 116D.02, subd. 2 (1990).

The legislature has further directed that:

to the fullest extent practicable the policies, rules and public laws of the state shall be interpreted and administered in accordance with the policies set forth in sections 116D.01 to 116D.06.

Minn.Stat. § 116D.03, subd. 1 (1991).

■ The mandate of section 116D.03, subdivision 1 requires this court to interpret the exceptions to the general EAW requirement narrowly. Therefore, we conclude that the exceptions of subpart 10 which refer to "gross floor space" apply only to facilities with buildings which have some appreciable gross floor space to be measured. This construction will assist appropriate governmental units in evaluating a project's potential for environmental consequences and will further the policies set forth in section 116D.02, subdivisions 1 and 2. Thus, we conclude that the exceptions contained in subpart 10 are inapplicable to the Bolander facility.

B.  Is Bolander exempt because there is no governmental decision to be made?

Section 116D.04 defines "government action" as "activities, including projects wholly or partially conducted, *permitted,* assisted, financed, *regulated, or approved by units of government.*"   Minn.Stat. § 116D.04, subd. 1a(d) (1990) (emphasis added).

■ Rule 4410.4600 provides in part that no EAW is required for "projects for which no governmental decisions are required." Minn.R. 4410.4600, subp. 2(A) (1990). The trial court concluded that the Bolander project was exempt from EAW requirements because:

The [license] request by [Bolander] does not require governmental action beyond

the ministerial act of issuing permits for uses contemplated by the ordinances.

We do not agree.

Bolander's property is zoned M3 for heavy industrial use, and a recycling yard is a permitted use under the city's zoning code. However, the city's ordinances provide:

> No person shall keep, maintain, or operate a recycling or salvage yard in the [city] without first obtaining a license from the city council. Such license shall be in addition to other licenses or permits required.

Minneapolis, Minn., Code of Ordinances § 350.20. Thus, the city regulates and provides permits for recycling yards. The Bolander project fits squarely within the definition of government action set forth in section 116D.04, subdivision 1a(d).

We recognize that the Minnesota Supreme Court has held:

> [R]eview of an application for a permitted use need go only to the applicant's compliance with the specific requirements regulating and performance standards prescribed by the ordinance. Subject to such compliance, approval of a permitted use follows as a matter of right.

*Chanhassen Estates Residents Assoc. v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn.1984), *quoted in Chase v. City of Minneapolis*, 401 N.W.2d 408, 412 (Minn. App.1987). However, neither *Chanhassen Estates* nor *Chase* addressed the application of chapter 116D and the rules promulgated thereunder. Rather, in both cases, the parties challenged a city council's denial of a building permit for a permitted use based on the city's zoning code. *Chanhassen Estates*, 342 N.W.2d at 337; *Chase*, 401 N.W.2d at 409. Here, the city has not based its decision regarding Bolander's application on its zoning code. Rather, the city has delayed issuance of the recycling yard permit in order to ensure compliance with chapter 116D.

Once a valid petition was filed with the EQB, the city was required to evaluate the petition and accompanying evidence to determine whether the proposed project

"may" have the "potential for significant environmental effects." Minn.Stat. § 116D.04, subd. 2a(c). Once the city concluded that the Bolander project may have such potential, section 116D.04, subdivision 2a requires preparation of an EAW. Section 116D.04 directs:

> If an [EAW] or an environmental impact statement is required for a governmental action under subdivision 2a, a project may not be started and a final government decision may not be made *to grant a permit, approve a project,* or begin a project, until:
>
> (1) a petition for an [EAW] is dismissed;
>
> (2) a negative declaration has been issued on the need for an environmental impact statement;
>
> (3) the environmental impact statement has been determined adequate; or
>
> (4) a variance has been granted from making an environmental impact statement by the environmental quality board.

Minn.Stat. § 116D.04, subd. 2b. These statutory provisions override the general rule set forth in *Chanhassen Estates*.

**C. Is Bolander exempt because the city failed to act in a timely manner?**

Section 116D.04, subdivision 2a provides:

A decision on the need for an [EAW] shall be made by the responsible governmental unit within 15 days after the petition is received by the responsible governmental unit. The [EQB]'s chair may extend the 15 day period by not more than 15 additional days upon request of the responsible governmental unit.

Minn.Stat. § 116D.04, subd. 2a(c) (1990).

■ The trial court found that the city had failed to act within the "mandatory 30 day time period for EAW action." The city does not dispute that it failed to reach its decision within the 30–day period, but claims that its failure to act does not render its decision invalid. We agree.

■ Neither section 116D.04, subdivision 2a(c) nor the rules promulgated thereunder, *see* Minn. R. 4410.1100, subp. 7 (1991), provides a penalty for noncompliance. Where a statute or rule does not explicitly declare

the consequences of a failure to comply, "we construe the language as directory only." *E.g., In Re Application of Crown Coco, Inc.*, 458 N.W.2d 132, 138 (Minn.App. 1990) (construing rule); *see also Sullivan v. Credit River Township*, 299 Minn. 170, 176–77, 217 N.W.2d 502, 507 (1974) (construing statute). "Violation of a directory statute does not result in the invalidity of the action taken." *Id.* at 177, 217 N.W.2d at 507. Therefore, we conclude that the city's failure to act within the time allotted by section 116D.04, subdivision 2a(c) does not relieve Bolander of its obligation to complete an EAW.

D. Is Bolander exempt because the proposed facility does not have the potential for significant environmental effects?

Bolander argues that the city's decision to require an EAW was erroneous because there was insufficient evidence on the record to support the conclusion that the proposed project may have the potential for significant environmental effects. We do not agree.

Section 116D.04, subdivision 2a(c) requires an EAW to be completed

whenever material evidence accompanying a petition * * * demonstrates that, because of the nature or location of a proposed action, there *may be potential for significant environmental effects.*

Minn.Stat. § 116D.04, subd. 2a(c) (1990) (emphasis added).

■ The city's decision will not be disturbed unless it is unreasonable, arbitrary, or capricious. *See Chase*, 401 N.W.2d at 412 (review of municipality's denial of building permit); *see also Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn.1988) ("The standard of review is whether a municipal body's decision was unreasonable, arbitrary or capricious").

An appellate court must independently review the municipality's record and decision without affording any special deference to the trial court's review.

*Chase*, 401 N.W.2d at 412 (quoting *Amoco Oil Co. v. City of Minneapolis*, 395 N.W.2d 115, 117 (Minn.App.1986)).

■ Prior to reaching its decision, the city held a full evidentiary hearing at which both Bolander and the PPERRIA were represented. In its extensive findings of fact, the city found that the site of the proposed facility is just over 1,000 feet from the nearest residential neighborhood, that trucks servicing the proposed facility would make between 160 and 200 trips past adjoining property each day, that the increase in traffic could cause increased noise and dust problems in the area, that both concrete and asphalt dust are potentially toxic, and that the potential for increased dust and particulate emissions warranted further study. These findings are well-documented in the city's memorandum.

The city need only find that "there *may* be potential for significant environmental effects." Minn.Stat. § 116D.04, subd. 2a(c) (emphasis added). Given this minimal standard, we conclude that the city's decision to require an EAW was reasonable and not arbitrary or capricious. *See Chase*, 401 N.W.2d at 412.

2. Because we have determined that the trial court erred in finding that Bolander was exempt from completing an EAW for the proposed project, the question of whether the trial court erred in denying the state's motion to intervene as of right is moot. *See In Re Inspection of Minn. Auto Specialties, Inc.*, 346 N.W.2d 657, 658 (Minn.1984) (holding where decision on merits is unnecessary, appeal will be dismissed as moot). Therefore, we dismiss the appeal of the state on the issue of intervention as of right.

3. Bolander claims that the trial court erred in denying its motion for a temporary restraining order and dismissing its claim for a temporary injunction. We disagree.

"The grant of a temporary injunction is an extraordinary remedy, left largely [to] a matter of judicial discretion." *Morse v. City of Waterville*, 458 N.W.2d 728, 729 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 28, 1990). This court has explained:

The trial court's decision will not be reversed on appeal unless, based upon the whole record, it appears that there has been an abuse of such discretion.

*Overholt Crop Ins. Serv. Co. v. Bredeson,* 437 N.W.2d 698, 701 (Minn.App.1989) (quoting *Cherne Indus., Inc. v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 91 (Minn.1979) (citation omitted)).

> To decide whether the court abused its discretion, evaluation of five factors is necessary:
>
> (1) the nature of the relationship between the parties;
>
> (2) the harm the plaintiff would suffer if the temporary relief is denied, as weighed against that inflicted on the defendant if the injunction is granted;
>
> (3) the likelihood that one party or the other will prevail on the merits;
>
> (4) facts permitting or requiring consideration of public policy expressed in statutes;
>
> (5) the administrative burden involved in judicial supervision and enforcement of the temporary decree.

*Oxford Dev. Minn., Inc. v. County of Ramsey,* 428 N.W.2d 434, 437 (Minn.App. 1988).

 "[T]he party seeking an injunction must clearly establish that his legal remedy is inadequate." *Id.* It is well-established that the failure to show irreparable harm is, by itself, a sufficient ground upon which to deny an injunction. *E.g., Morse,* 458 N.W.2d at 729.

Bolander has failed to establish that it will suffer harm for which its legal remedy is inadequate. Bolander claims that it has suffered irreparable harm "in its disparate treatment and because the city's actions are arguably illegal." We cannot agree. Even assuming arguendo that the city's operation of its recycling yard is in violation of state environmental laws, this is not in and of itself an irreparable injury which entitles a claimant to a temporary injunction. There is no indication that Bolander's interests could not be adequately upheld without the use of this extraordinary remedy. *See Morse,* 458 N.W.2d at 729. The trial court did not abuse its discretion in denying Bolander's request for a temporary restraining order and injunction.

## DECISION

The trial court's order directing the city to issue a recycling yard permit to Bolander is reversed. The state's appeal of the trial court's denial of its motion to intervene as of right is dismissed as moot. The trial court's dismissal of Bolander's claim for temporary injunction and denial of motion for temporary restraining order is affirmed.

Affirmed in part, reversed in part and dismissed in part.