Patrick DUNCANSON, et al., Respondents,

v.

**BOARD OF SUPERVISORS OF DANVILLE TOWNSHIP, et al., Appellants.**

No. C2–95–2479.

Court of Appeals of Minnesota.

July 9, 1996.

Review Denied Sept. 20, 1996.

Michael S. Dove, Gislason, Dosland, Hunter & Malecki, P.L.L.P., New Ulm, for Respondents.

Charles K. Frundt, Frundt, Johnson & Roverud, Ltd., Blue Earth, Thomas J. Shroyer, Moss & Barnett, Minneapolis, for Appellants.

Considered and decided by CRIPPEN, P.J., TOUSSAINT, C.J., and HUSPENI, J.

## OPINION

HUSPENI, Judge.

Respondents moved for a temporary injunction prohibiting appellant, a township, from enforcing a moratorium against them; appellants brought a declaratory judgment action to determine that the ordinance was lawfully enacted and valid. The district court issued findings of fact that the ordinance was lawfully enacted and valid, but discriminatory with regard to respondents and granted respondents' motion for a temporary injunction. Appellants challenge the temporary injunction on appeal; respondents challenge the determination that the ordinance was lawfully enacted. Because we conclude that the ordinance was lawfully enacted and was not discriminatory, we affirm in part and reverse in part.

## FACTS

Respondents Patrick and Kristin Duncanson wished to construct a hog feedlot accommodating 4800 hogs on their land in Danville township. On July 14, 1995, they met with appellant Danville Township Board of Supervisors to discuss compensating Danville for damage the feedlot traffic could potentially cause to township roads. Another meeting was scheduled for August 2.

At this meeting, there was discussion of whether Danville should get involved in zoning: it then had no zoning ordinances. At an August 9 meeting, a guest speaker presented information on what another township had done with zoning ordinances and the attorney presented a proposed moratorium ordinance. It was resolved to hold another meeting to discuss the zoning issue on August 29.

The next regularly scheduled township board meeting fell on August 15. Although there was no prior plan to adopt the moratorium at this meeting, a number of citizens who wanted the moratorium enacted were present. After a call to the township attorney elicited the information that passing the moratorium immediately would be legal, the ordinance was passed. It prohibited for one year the construction of animal feedlots for over 300 animal units, junkyards, salvage yards, hazardous waste facilities, mining and gravel pits, and tire recycling facilities.

## ISSUES

1. Did the district court err in concluding that Danville had complied with the statute in adopting the zoning moratorium?

2. Did the district court err in concluding that the moratorium ordinance was arbitrary and discriminatory with regard to the Duncansons?

## ANALYSIS

**1. Was the moratorium lawfully enacted?**

The construction of statutes is clearly a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

The document adopted by Danville at the August 15 meeting was titled "Interim Zoning Ordinance." Because there was no previous plan to discuss the zoning issue at that meeting, there was no notice that it would be discussed. The Duncansons argue that the ordinance is unlawful because Danville failed to comply with Minn.Stat. § 462.357, subd. 3 (1994), providing that no zoning ordinance shall be adopted until there has been a hearing and that

notice of the time, place and purpose of the hearing shall be published in the official

newspaper of the municipality at least ten days prior to the day of the hearing.

Danville argues that this statute does not apply because, although the ordinance was labelled "Interim Zoning Ordinance," it was not a zoning ordinance but an interim ordinance, as defined by Minn.Stat. § 462.355, subd. 4 (1994):

> The interim ordinance may regulate, restrict or prohibit any use, development, or subdivision within the jurisdiction or a portion thereof for a period not to exceed one year from the date it is effective.

We agree that the Danville ordinance is, in fact, an interim ordinance. The ordinance reads:

> This Interim Ordinance shall be in effect until August 14, 1996 or until the final adoption of an ordinance to regulate land use and development in Danville Township whichever occurs first.

The document refers to itself as an "Interim Ordinance" and refers to another later ordinance that will "regulate land use and development," i.e., a zoning ordinance as described in Minn Stat. § 462.357. It also includes the time provision specified in the statute on interim ordinances.

■ Comparison of the requirements of Minn.Stat. § 462.357, subd. 3 (1994), with those of Minn.Stat. § 462.355, subd. 4 (1994), persuades us that no notice is required when an interim ordinance is enacted. While section 462.357, subd. 3 (the zoning ordinance), clearly requires notice of the time, place, and purpose of the hearing, there is no comparable provision in section 462.355, subd. 4 (the interim ordinance). There is no legislative indication that the provisions of these two ordinances in any way overlap. When the legislature wished to require a notice provision in a statute, it has unequivocally included one. We will not read a "notice" requirement into the interim ordinance statute when the legislature declined to include one.

■ The Duncansons also argue that Danville failed to comply with section 462.355, subd. 4 (1994), which provides that a municipality may adopt an interim ordinance if it is conducting studies or has authorized a study to be conducted or has held or has scheduled a hearing for the purpose of considering adoption or amendment of a comprehensive plan.

We find no merit in the Duncansons' argument. The Danville interim ordinance states that the town board "authorized a study to be conducted to determine whether the Township should adopt a Township Comprehensive [Zoning] Plan." We believe that this language satisfies the statutory requirement. There was insufficient time for Danville to have developed the specific parameters of its study when it passed the interim ordinance, and it may conduct that study throughout the duration of the interim ordinance which, pursuant to Minn.Stat. § 462.355, subd. 4, may be extended up to a total of 18 additional months.

We agree with the district court that the Danville interim ordinance was validly enacted in compliance with statutory requirements.

**2. Was the moratorium arbitrary and discriminatory?**

■ A moratorium will be upheld unless it is determined that a zoning authority acted arbitrarily in adopting it. *See Almquist v. Town of Marshan,* 308 Minn. 52, 54, 245 N.W.2d 819, 820–21 (1976) (reversing a district court holding that a municipality lacked the power to enforce a moratorium, but remanding for a determination of the effect of the moratorium on one party); *TPW, Inc. v. City of New Hope,* 388 N.W.2d 390, 394 (Minn.App.1986) (reversing a district court holding that a moratorium was arbitrary because it found that the existing land use plan was lacking in safeguards and that the city needed more time to conduct a study), *review denied* (Minn. Aug. 13, 1986).

The district court granted the Duncansons' motion for a temporary injunction, finding that:

> [T]he Board's interim zoning ordinance was passed to prevent [the Duncansons] from proceeding with their finishing facilities. * * * [The ordinance] cannot be used in a discriminatory manner to prevent a single project.

In reaching this conclusion, the district court relied upon *Medical Services, Inc. v. City of Savage,* 487 N.W.2d 263 (Minn.App.1992). We find this reliance misplaced.

In *Medical Services,* this court found a city to have acted arbitrarily because only one pending proposed facility was affected by the moratorium. *Id.* at 267. While it is true that the Duncansons' proposed feedlot was the only project known to be affected by the Danville moratorium, *Medical Services* is readily distinguishable on other grounds. First, the city council in *Medical Services* did not enact its moratorium until August 13, 1991, even though the city council

> had been aware of Medical Services' general plans to construct an infectious waste facility since at least 1989. * * *
>
> On June 13, 1991 the city council considered and rejected a proposed amendment to the zoning ordinance that would have made an infectious waste facility a conditional use, but the council did not direct city staff to conduct further study concerning the treatment and disposal of infectious waste * * *.
>
> The city enacted the moratorium only after Medical Services commenced legal action [on June 24, 1991]. The moratorium was enacted after a closed executive session meeting of the council called to discuss the law suit.

*Id.* at 267. Here, the moratorium was enacted at an open regular meeting of the board, only a month after the board had first learned of the Duncansons' proposal and two weeks **before** the Duncansons brought their declaratory judgment action.

Second, *Medical Services* held that:

> Had the city council intended to exclude infectious waste processing plants from the permitted uses in light industrial areas, it could have done so. * * *
>
> We conclude that an infectious waste processing facility is a permitted use under the Savage zoning ordinance.
>
> Because an infectious waste processing facility is a permitted use under the ordinance, Medical Services is entitled to a building permit as of right upon compliance with specific requirements, regula-

tions, and performance standards prescribed by the Savage zoning ordinance. *Id.* at 266–67. Savage had a system of zoning ordinances in place. The issue was whether Medical Services' proposed facility complied with those ordinances, and the moratorium was enacted to prevent construction despite that compliance. Danville had no zoning ordinances and no basis for judging the desirability or the feasibility of the Duncansons' proposed facility. Its moratorium was enacted to remedy that deficiency.

The *Almquist* case presents a situation analogous to the one before us and is instructive regarding the critical issues that must be considered. In both *Almquist* and this case, municipal authorities responded to dilemmas relating to land use by enacting temporary moratoria. The board in *Almquist* was confronted with a number of developers submitting proposals before the city had a comprehensive development plan; here, the board faced the dilemma of the imminent construction of a facility, the potential impact of which on the township was simply unknown. The rationale of *Almquist* is persuasive:

> [T]here is nothing in this record to justify a finding that the * * * adoption of the moratorium constituted arbitrary, capricious, or unreasonable conduct. The evidence quite clearly indicates that members of the board were laymen with no particular expertise to cope with the complicated problems of urban planning and development. * * * [I]t was not wholly unreasonable for the board ultimately to resort to a moratorium which would permit them to utilize the expertise of professional planners for a comprehensive zoning system which would affect the growth and quality of a community for an indefinite period in the future. We find the reasons given for the moratorium demonstrate a good-faith effort to accomplish these goals. The moratorium resolution itself recites a need for orderly development and for the assistance of the county planning office in preparing a comprehensive plan to meet the need in a sensible and workable manner.
>
> We are of the opinion that the considerations which prompted adoption of the moratorium were matters of legitimate

concern to the town board and justified their action. We are persuaded on this record that the board acted in good faith.

308 Minn. at 62–63, 245 N.W.2d at 825. The Danville board members lacked not only expertise, as did the board members in *Almquist;* they also lacked experience. Danville had never addressed any zoning problems and had no zoning ordinances; the Duncansons' proposal demonstrated the need for Danville to address a topic that had not previously been relevant to a primarily rural community. Further, it is clear that the *Almquist* court found the element of good faith to be critical. We find in this case, as did the court in *Almquist,* that the board acted in good faith. It is the good faith effort demonstrated here to plan for orderly development that must, we believe, defeat any objection that this ordinance is directed at a single project.

## DECISION

We affirm the holding that Danville's moratorium was enacted lawfully and reverse the holding that it was arbitrary and discriminatory with regard to the Duncansons' proposed facility.

Affirmed in part and reversed in part.